No. 14,583.

RICE, doing business as Rice and Company *v.* GIFFORD.

(110 P. [2d] 1113)

Decided February 10, 1941.   Rehearing denied March 3, 1941.

Mr. CHARLES W. SHELDON, JR., Mr. HARRY C. RIDDLE, for plaintiff in error.

Mr. LOWELL WHITE, Mr. HOWARD ROEPNACK, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

DEFENDANT in error Gifford, nee Wilcox, who was plaintiff below, had judgment for $926.48, being the unliquidated balance due under the terms of a contract between said Gifford and Charles J. Rice and Company, plaintiff in error, plus interest, and costs of suit. Super-

sedeas was granted. Reversal is sought principally on the ground that Gifford had received payment in full. Reference will be made to the parties by name.

Charles J. Rice and Company for a numbers of years had engaged in the investment brokerage business, principally in the sale of municipal bonds. Gifford had been employed by the company as stenographer, book-keeper and saleswoman, but her employment as such terminated October 31, 1936. There was some dispute as to the amount of compensation due her, and no agreement was reached between the parties. Counsel for Gifford prepared a contract which was not acceptable to Rice, and on December 15, 1936, he wrote her as follows:

"December 15, 1936.

"Mrs. Patricia S. Wilcox
Denver, Colorado

"In accordance with our agreement your compensation for services which you have rendered to me or to Charles J. Rice & Co. shall equal one-fourth of the net profits of the business known as Charles J. Rice & Co. until such time as your services are discontinued.

"It is further agreed that your services shall be discontinued as of October 31, 1936.

"That as compensation for services rendered to that date you are entitled to receive one-fourth of the net profits to that date. You are further entitled to receive one-fourth of the net profits hereafter received by Charles J. Rice and Co. on accounts receivable up to and including October 31, 1936, and one-fourth of the net profits which may hereafter be received on account of any and all contracts and options owned by Charles J. Rice & Co. as of October 31, 1936, or in which Charles J. Rice & Co. may have a participation. Also you are entitled to receive one-fourth of the amounts which have been paid by Charles J. Rice & Co. for office equipment and supplies, which one-fourth, it is agreed, is the sum of $50.96.

"The accounts between us were previously settled as of July 31, 1936. For the period since that date it is agreed that the enclosed statement of our accounts, showing an overdraft of $12.21, due Charles J. Rice & Co. is correct.

"As of October 31, 1936, Charles J. Rice & Co. owned or had a participation in the following contracts and options, and I further warrant that neither I nor Charles J. Rice & Co. have any additional contracts or options for the purchase or sale of bonds nor interest in any contracts or options, either oral or written, which were made or contracted prior to that time.

"$45,000   Alamosa County, Colorado School District No. 3 Refunding 3¾s

$20,000   Alamosa and Saguache Counties, Colorado Joint Consolidated School District No. 23 Refunding 4¼s

$70,500   Town of Aspen, Colorado Refunding 3s

$65,000   Town of Dolores, Colorado Water Works Extension 4½s

$ 9,000   Town of Dolores, Colorado Memorial Building Refunding 4½s

$10,000   Garfield County, Colorado School District No. 10 Refunding 4s

$69,000   City of Glenwood Springs, Colorado Refunding 3s

$41,800   Kiowa County, Colorado School District No. 9 Refunding 4s

$11,500   Logan County, Colorado School District No. 91 Refunding 4s

$115,000   Town of Meeker, Colorado Refunding 4s

$ 15,800   Montezuma County, Colorado School District No. 4 Refunding 4¾s

$ 25,000   Prowers County, Colorado School District No. 41 Refunding 3¾s

$ 75,000 Rio Blanca, Colorado High School Refunding 3¼s

$170,000 City of Alamosa, Colorado Refunding 4s

$ 33,000 Town of Debeque, Colorado Refunding 3s

"You shall be entitled to receive one-fourth of the net profits which Charles J. Rice & Co. shall receive, or be entitled to receive from any of the above contracts and options. The settlement sheet between the participating brokers shall be the basis for determining the amount of profit to each of them and I agree to furnish you with an exact copy of such settlement sheet at the time I receive any money by reason of the above described contracts and options and I further agree to pay you one-fourth of the net profits from each contract or option promptly upon receipt of such funds.

"Chas. J. Rice & Co.

"Chas. J. Rice."

The controversy here concerns the meaning of the words "net profits" as used in the above letter. The terms set out in the letter were accepted by Gifford, thereby creating a contract between the parties. There is no argument concerning their relations prior to October 31, 1936. The dispute arose from the attempt of Rice to make deductions for office expense and overhead from sums of money remitted or remittable to Gifford after October 31, 1936.

Several checks were sent to Gifford purporting to be payments in full to certain dates, which checks she turned over to her attorney who advised Rice that they were not being accepted. There is some question as to whether there was an actual tender of the checks to Rice, but they were in the possession of her attorney, who informed Rice they were not acceptable.

Rice and Company operated jointly with several other brokers on nearly all of the business, and settlement sheets were issued periodically among them. As to these settlement sheets, the contract provides that Gifford

shall receive "one-fourth of the net profits which may hereafter be received on account of any and all contracts and options owned by Charles J. Rice & Co. as of October 31, 1936, or in which Charles J. Rice & Co. may have a participation." As before stated, the dispute arises from the use of the words "net profits" as applied to these outstanding contracts and options. It will be noted as to these items that the last paragraph of the contract provides: "The settlement sheet between the participating brokers shall be the basis for determining the amount of profit to each of them and I agree to furnish you with an exact copy of such settlement sheet at the time I receive any money by reason of the above described contracts and options and I further agree to pay you one-fourth of the net profits from each contract or option promptly upon receipt of such funds."

█ The trial court held that the words "net profits" differed in meaning as used in this last sentence based upon the settlement sheets from that conveyed by them as to the division before Gifford left the office. In other words, Rice had no right to make deductions for overhead and expenses from the profits based on the figures shown on the settlement sheets. Counsel for Rice seem to recognize this when they conclude their argument by speaking of the promise to pay Gifford one-fourth of the net profits of the business; "with the additional or collateral promise that plaintiff should be informed via the settlement sheets." The settlement sheets were to be more than information. Rice declared the sheets "shall be the basis for determining the amount of profit to each of them." During the trial, his counsel admitted that the dispute narrowed itself practically to what was meant by the word "net."

Counsel for Rice also urge that because certain deductions were made from the amounts shown on the settlement sheets regarding payments to Lee, another salesman, it is indicative that this was customary procedure. Even if that were true, it would not be binding

on Gifford. The record discloses that there was no uniformity in the deductions, even as to Lee, who is not a party to this dispute.

We agree with the trial court that the reasonable construction of the language used permits no deduction from the settlement sheets.

There remains, then, only the question of the amount of the judgment and that of the conduct of Gifford subsequent to the sending to her of the letter dated December 15, 1936. We find that the amount of the judgment is proper, because it was calculated on the basis of the settlement sheets—there being no objection to their introduction—after the court decided on the interpretation of the questioned language of the agreement. However, counsel for Gifford acknowledge an error in her favor of fifty cents in the calculation.

No basis of estoppel arises due to any conduct of Gifford, as it in no way caused Rice to change his position. When her counsel first conferred with Rice, he admitted that there was a dispute concerning her interest, and that he was aware of her refusal to accept the checks sent her in full settlement. Whatever delay attended her conduct was due to her traveling around the country, her remarriage and the forwarding of some mail.

We find no reversible error in the record. The judgment is accordingly affirmed, except as to the inclusion of the fifty cents noted above, which sum is ordered to be deducted therefrom.

Mr. Justice Otto Bock and Mr. Justice Hilliard concur.

Mr. Chief Justice Francis E. Bouck concurs in the result.