534 P.2d 813 (1975)
Rodney W. McNEILL and Pamela L. McNeill, Plaintiffs-Appellees,
v.
Roger L. ALLEN, an Individual, et al., Defendants-Appellees.
Gerald L. HAMMER, Defendant, Third-Party Plaintiff, and Appellant,
v.
A A ENGINEERS & ASSOCIATES, INC., a Colorado Corporation, Third-Party Defendant-Appellee.
The DENVER LUMBER CO., a Colorado Corporation, Plaintiff-Appellee,
v.
BRIARWOOD CORPORATION, a Colorado Corporation, et al., Defendants-Appellees,
and
Gerald L. Hammer, Defendant-Appellant.
No. 73-423.
Colorado Court of Appeals, Div. I.
February 11, 1975.
Rehearing Denied March 18, 1975.
*816 H. R. McCollister, Denver, for plaintiffs-appellees.
A. Daniel Rooney, Aurora, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Defendant Gerald L. Hammer appeals from a judgment holding him liable on a house construction contract and for damages resulting from his fraudulent concealment of material information. We affirm the judgment as to the liability of defendant Hammer, but reverse as to certain elements of damages.
This case was tried to the court over several days and produced conflicting interpretations of the critical events and relationships between the parties. We accept the trial court's findings as to the facts, since there is evidence in the record to support those findings. Adler v. Adler, 167 Colo. 145, 445 P.2d 906.
Sometime in 1971 defendant Hammer, a licensed real estate broker, and defendant Roger L. Allen, a fledgling building contractor, made arrangements to work together in the business of constructing and selling houses. An entity known as The Briarwood Companies was formed to advance this business. During the summer of that year plaintiffs Rodney and Pamela McNeill, a young couple, met Allen and discussed the possibility of his constructing a house for them. At Allen's suggestions the McNeills met Hammer, who showed them certain building sites in Aurora. The McNeills chose one of these sites and Hammer appraised the house they then owned. On August 8, 1971, the McNeills and Allen signed a construction contract prepared by Hammer which set a price of $38,000 for the house and lot. When Allen obtained estimates of the cost of the house they proposed to build, it was discovered that the total cost would exceed the McNeills' budget. Ultimately plans were drawn up which appeared to fall within the budgetary limits of the McNeills and another draft of the contract was prepared and signed. Two principal issues at trial were whether there was a fixed price or a "cost-plus" contract, and which draft of the contract controlled. The court concluded that $38,000 was to be the maximum price under the contract, and that the contract prepared on August 8 was controlling.
Subsequently Hammer obtained title to the building lot chosen by the McNeills and conveyed title jointly to himself and Allen. A construction loan was obtained which was co-signed by both Allen and Hammer. Once construction got underway, Allen supervised the building, but Hammer had to approve all cost disbursements from the construction loan under his agreement with the lending institution.
The McNeills planned to sell their residence at 2838 East Euclid and use the proceeds from the sale as a down payment on the new house. Anticipating the completion of the new house in the spring they listed the East Euclid house for sale with a realtor in January of 1972. At the insistence of Hammer this listing was withdrawn and given to Hammer who found a buyer and scheduled a closing date for three days prior to the date on which the new house was expected to be ready for occupancy. On March 18, 1972, Hammer and the McNeills inspected the new house. On March 21 the closing was held on the East Euclid house. Then, on the afternoon of that same day, after completion of the closing, Allen informed the McNeills that cost overruns had driven the price of the new house up to about $43,000, a figure which he revised upward the next day to about $46,000. The trial court found that this was the first notice to the McNeills that they were expected to pay a price in excess of $38,000 for the new house.
The closing on the new house was never held. By giving $5,000 to Allen in exchange *817 for a promissory note they had previously given The Briarwood Companies, the McNeills obtained the keys to the house and moved in. At that time considerable work remained to be done to meet the specifications of the contract plans, including exterior painting and interior finishing. The house was mislocated on the lot, and acquisition of a strip of three feet from an adjoining lot, also owned by Hammer, was required to meet the city building code. Since that time Allen has filed a petition in bankruptcy and an order was issued by the referee in bankruptcy restraining any parties from proceeding against him. Several materialmen remained unpaid for materials provided for the house, and these claims were consolidated with the action brought by the McNeills to compel the closing at the contract price and for the recovery of damages.
The trial court found that Allen and Hammer had been engaged in a joint venture to construct and sell a house to the McNeills and that consequently Hammer was bound by the contract of August 8, 1971, to close at a price of $38,000. It further found that Hammer had believed at the time the contract was signed that the house could not be built for $38,000 but did not convey this information to the McNeills who reasonably believed the house could be built for that amount. It also found that the evidence was insufficient to show that in fact the house had cost more than $38,000 to build. Concluding that Hammer was liable for willful and wanton fraud, the court awarded damages for mental suffering to the McNeills, as well as exemplary damages in the amount of $10,000. The court found that the McNeills were entitled to the costs of bringing the house to contract specifications, the value lost to the McNeills by reason of loss of a favorable interest rate on their home loan resulting from the delay in closing, litigation expenses, and attorneys' fees. The court also found Hammer individually liable for the materialmens' liens that were proved.

I.
Hammer maintains that he was not engaged in a joint venture with Allen, but rather that he was the owner of the lot on which the McNeills' house was built and is entitled to compensation either as his profit on the sale of the land, or as a commission for services as a broker between the McNeills and Allen.
A joint venture will not arise by operation of law but only from the voluntary agreement of the parties, either express or implied. To establish a joint venture, all three of the following criteria must be demonstrated: (1) Joint interest in the appropriate property among those sought to be held as joint venturers, (2) an express or implied agreement to share in profits and losses of the venture, and (3) actions and conduct showing cooperation in the project. Realty Development Co. v. Feit, 154 Colo. 44, 387 P.2d 898.
From the record it appears that Hammer and Allen held joint title in the lot on which the house was built. There was extensive cooperation shown by the joint obligation on the construction loan, shared knowledge of the disbursements from that loan, and Hammer's role in preparing the contract for the McNeills. There was testimony that the construction loan would not have been available had Hammer not co-signed, since Allen was just getting started in the business. Nor is it disputed that Hammer and Allen had agreed that in addition to payment for his lot Hammer would receive an amount of $1,900 at closing, to come from half of the builder's projected profit for the job. Hammer insists, however, that this agreement said nothing about losses and therefore cannot suffice as the agreement necessary to establish a joint venture.
In the absence of evidence to the contrary, a right to participate in profits implies a corresponding liability for losses, and simply because losses are not specifically mentioned does not mean there has been no agreement establishing a joint venture. Quier v. Rickly, 116 Colo. 5, 177 P.
*818 2d 549; Richardson v. Keely, 58 Colo. 47, 142 P. 167. There is ample evidence in the record to show an implied agreement between Hammer and Allen to form a joint venture to build a house for the McNeills, and to show as well the elements of joint ownership and active cooperation. Consequently Hammer is personally liable on the contract prepared by him and signed by his co-venturer Allen for Briarwood Companies. Bushman Construction Co. v. Air Force Academy Housing, Inc., 327 F.2d 481 (10th Cir.).

II.
As a second point of appeal defendant Hammer contends that the findings of the trial court that Hammer's behavior constituted fraud was error. He argues that the court found that charges of cost overruns had not been proved, and that the only demands for more than the contract price of $38,000 were made by defendant Allen, not by Hammer. He further argues that to constitute fraud, a misrepresentation must be of an existing or past material fact, while at most Hammer only expressed an opinion as to a future probability that the house could be built for $38,000.
Actionable fraud may be demonstrated by a showing of a failure to disclose a material fact that in good conscience should be disclosed, made with knowledge that such fact should be disclosed and with the intent that the plaintiff would act in reliance thereon, and a showing that plaintiff did act in reliance thereon to his damage. Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154.
On supporting evidence the trial court found that Hammer prepared a contract to sell the house and lot to the McNeills for a price of $38,000 though he did not himself believe the project could be completed for that price and though he intended to obtain his land price and full profit from the McNeills regardless of what price Allen might demand. Since the McNeills were obviously inexperienced as regards the costs of house construction and since they had made clear to Hammer their budgetary restrictions, Hammer's actions in regard to the contract price represent the concealment of a material fact that in good conscience should have been disclosed.
The conduct of Hammer displays not only an utter indifference as to whether the contract with the McNeills was for a fixed price, but also an intent to induce the McNeills to agree to buy by setting a price which they felt they could afford. Actual reliance on the contract price appears from the McNeills' decision to give the listing on the old house to Hammer at a meeting at which they received assurances regarding the $38,000 price and from their decision to close on that house three days before the date on which they had been assured that the closing would take place on the new house. This resulted in the loss of a favorable interest rate and court costs. We conclude that the trial court was correct in finding actionable fraud on the part of Hammer.

III.
Hammer also contends that the amount of damages awarded is excessive. The trial court concluded that, pursuant to the contract, additional work remained to be done on the house and that mislocation of the house on the lot required the conveyance of a three-foot strip from an adjoining lot owned by Hammer to meet Aurora building code requirements. The trial court further found that the contract price should be abated by the $5,000 paid to Allen by the McNeills to obtain possession of the house. There is evidence in the record to support all of these findings.
It is maintained by Hammer that the award for damages for loss of favorable interest rate on the McNeills' home loan was error because it was not reasonably within the contemplation of the parties. We do not agree. An injured party may recover such damages as are the natural and probable result of the injury sustained by virtue of a tortious act. See Thompson v. Tartler, 166 Colo. 247, 443 P.2d 365.
*819 The McNeills had made arrangements for a loan at the time of the expected closing. The indefinite postponement of the closing was a natural result of the fraud perpetrated by Hammer. The evidence discloses that the interest rate that the McNeills will be required to pay has increased considerably. Hence, that increase in the interest rate is a proper element of the damages to be awarded.
Ordinarily there can be no recovery in tort for mental suffering resulting from injury to plaintiff's property, but where the act occasioning the injury was inspired by fraud or malice, mental suffering may be a proper element of damages. Valley Development Co. v. Weeks, 147 Colo. 591, 364 P.2d 730; Hall v. Jackson, 24 Colo.App. 225, 134 P. 151. However, C.R.C.P. 9(g), requires specific pleading of items of special damage, that is, those damages which are deemed not to have been within the contemplation of the parties but arise from an unusual state of facts which may be known to one of the parties but unknown to the other. Rogers v. Funkhouser, 121 Colo. 13, 212 P.2d 497.
In the circumstances of this case where the fraud was incident to a breach of contract, where there was no physical injury, and where there was no evidence that Hammer knew that Mrs. McNeill had had health problems which would cause the McNeills additional anxiety as the result of Hammer's conduct, we hold that mental suffering was an item of special damage which should have been specifically pleaded. See McCreery v. Miller's Groceteria Co., 99 Colo. 499, 64 P. 2d 803; Westesen v. Olathe State Bank, 78 Colo. 217, 240 P. 689. Examination of the original complaint and the two amendments discloses that mental suffering was not raised as an item of special damage. At trial, counsel for Hammer objected to the introduction of testimony by Mrs. McNeill concerning the effect of Hammer's conduct on her personally. Counsel for the McNeills contended that it was admissible on the issues of exemplary damages and fraud and deceit as raised in the pleadings. Assuming, arguendo, that the evidence was admissible for the reasons stated, nevertheless, Hammer preserved his objections to the introduction of a new issue in the case, i. e., mental suffering, and the court erred in making an award for such damages. On remand the amount of damages allowed on this issue must be deducted from the judgment.
The awarding of costs is within the sound discretion of the trial court. Lamont v. Riverside Irrigation District, 179 Colo. 134, 498 P.2d 1150. However, certain items awarded by the trial court in this case are specifically excluded by law from an award of costs. Where depositions of witnesses have been taken prior to trial and the persons who have been deposed are available at trial, the expense of taking the depositions may not be awarded as costs. Morris v. Redak, 124 Colo. 27, 234 P.2d 908; Brakhage v. Georgetown Associates, Inc., 33 Colo.App. 385, 523 P.2d 145. For this reason the court erred in awarding the expense of taking the depositions of Hammer and Allen.
Although in the absence of any contractual or statutory liability therefor, attorneys' fees are not ordinarily recoverable as items of damage in either a contract or tort action, Beebe v. Pierce, Colo., 521 P.2d 1263, but attorneys' fees may be awarded where defendant's wrongful acts have involved plaintiffs in litigation with others. See Sun Indemnity Co. v. Landis, 119 Colo. 191, 201 P.2d 602; International State Bank of Trinidad v. Trinidad Bean & Elevator Co., 79 Colo. 286, 245 P. 489. However, those cases permit recovery of litigation costs only where the party seeking the costs had to defend his rights against third parties in separate litigation. Though there are third parties in this case asserting liens against the property in dispute, the expenses sought have been incurred principally to vindicate the rights of the McNeills as against Hammer in this action, not in separate litigation. Consequently, in the absence of any other authority, *820 the award of attorneys' fees to the McNeills was not justified. Other than the exceptions just noted, the trial court's award of costs was within the exercise of its sound discretion and is affirmed.

IV.
The damages awarded by the trial court included exemplary damages in the amount of $10,000 and body execution against Hammer. In a tort action where the injury complained of was accompanied by circumstances of fraud, where proof of those circumstances is beyond a reasonable doubt, and where actual damages have been assessed, reasonable exemplary damages and body execution may be awarded. See C.R.C.P. 101(a), (d); § 13-21-102, C. R.S.1973 (C.R.S.1963, 41-2-2); § 13-59-103, C.R.S.1973 (1965 Perm.Supp., C.R.S. 1963, 77-9-3); § 13-25-127(2), (3), C.R. S.1973 (1971 Perm.Supp., C.R.S.1963, 52-1-28(2), (3)). Here, on supporting evidence, the trial court concluded that Hammer's conduct was fraudulent beyond a reasonable doubt, and awarded actual damages.
Exemplary damages are awarded as punishment to the wrongdoer and as a deterrent to others. Ark Valley Alfalfa Mills, Inc. v. Day, 128 Colo. 436, 263 P.2d 815. Such an award must be reasonably related to the compensatory damages, that is, commensurate with the injury done. Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36; Kresse v. Bennett, 151 Colo. 549, 379 P.2d 807. This does not mean that there is a particular fixed ratio of exemplary damages to actual damages which must be met, and the purpose of punishment and deterrence may best be served by relatively higher or relatively lower exemplary damages according to the nature of the wrongful conduct. Wegner v. Rodeo Cowboys Ass'n, 290 F.Supp. 369 (D.Colo.), aff'd, 417 F.2d 881 (10th Cir.), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60.
The findings of the trial court portray Hammer as an experienced broker who misled those who relied on his professional judgment, who permitted his joint venturer to demand an increased price for a new house while the McNeills were homeless after the sale of their house for which he was their broker, and who tried to protect his own interests at the expense of the McNeills when his business associate encountered financial difficulties. An award of exemplary damages is justified to punish such conduct and to deter others in a similar position. We do not find the amount of the award to be unreasonable in comparison to the actual damages sustained and in light of the nature of the wrongful conduct.

V.
Following the issuance of the trial court's findings of fact, conclusions of law and judgment on July 31, 1973, the court issued two amendments of its findings and judgment in which it made certain clerical corrections and awarded personal judgments against Hammer to five lien claimants who had proved their claims at trial. We find that the clerical changes were within the discretionary power of the trial court under C.R.C.P. 60(a). The awards of personal judgments, though substantive in nature, were within the discretion of the court upon timely motion by the parties. See C.R.C.P. 59 and 60.
In the judgment the court listed the abatement items at $5,002.57. Although the $5,000 figure is supported by the evidence, we agree with defendant's contention that there is no evidence nor anything in the findings which would account for the $2.57. Thus, this amount, although insignificant, must be deducted from the judgment.
We have considered the other alleged errors and find them to be without merit. This cause is remanded with directions to modify the judgment as to the amount of damages in accordance with this opinion and as so modified the judgment is affirmed.
BERMAN and KELLY, JJ., concur.