James G. SCHNELL and Ann H. Schnell, Plaintiffs-Appellants,

v.

Velmar O. GUSTAFSON and Barbara Lee Gustafson, and Homequity, Inc., Defendants-Appellees.

No. 80CA0879.

Colorado Court of Appeals, Div. I.

Dec. 24, 1981.

Duncan & Chew, Rick Chew, Durango, for plaintiffs-appellants.

Hamilton, Hamilton, Shand & McLachlan, P. C., E. B. Hamilton, Jr., Durango, for defendants-appellees.

STERNBERG, Judge.

Contending that the jury was improperly instructed, the plaintiffs, Schnells, appeal a judgment entered on a jury verdict in favor of the defendants, Gustafsons. We reverse and remand for a new trial.

The Gustafsons owned a home in Durango, Colorado. In 1973, they received a letter from the Colorado Department of Health informing them that radioactive uranium mine tailings had been found under their home and recommending that corrective measures be taken. The Gustafsons did nothing to correct the situation.

On June 2, 1975, Mr. Gustafson was informed by his employer that he was to be transferred out of state. He was also told that the employer provided a service to employees being transferred to minimize financial difficulties they might encounter in selling a home. Under this policy, a corporation, Homequity, Inc., would purchase the home of an employee being transferred. Pursuant to that policy, the Gustafsons and Homequity negotiated, and on July 16, 1975, agreed on a sales price. On August 14, 1975, their transaction was closed by the Gustafsons receiving their money and delivering to Homequity a deed signed in blank. The Gustafsons continued to reside in the home until they moved to Mr. Gustafson's new job site.

A week after the closing, on August 21, 1975, the Schnells were brought to the Gustafsons' home by a real estate agent with whom Homequity had listed the property. While the Schnells viewed the home, the Gustafsons answered various questions asked them. It was the Schnells' understanding that they were buying the home from the Gustafsons. Following another visit to the home, during which additional conversation took place between the parties, the Schnells contracted to buy the home. The portion of the contract listing the name of the seller was left blank. After that time the Schnells contacted the Gustafsons and made arrangements to store furniture in the home until the closing. When the closing took place, on September 9, 1975, the Schnells' names were inserted in the blank deed previously signed by the Gustafsons, and delivery of that deed was made. On one settlement document Homequity was listed as the seller while on another the Gustafsons were listed as sellers.

In the spring of 1976, the Schnells were notified by representatives of the Colorado Department of Health of the uranium tailing condition. They then filed suit against the Gustafsons and Homequity, alleging fraud and deceit. After suit was filed the Schnells sold the home, disclosing the uranium tailing problem, allegedly for $15,000 less than the established market value for similar homes not built on uranium tailings.

The evidence was undisputed that the Gustafsons informed neither the Schnells nor Homequity, Inc., of the existence of the uranium mine tailings. Homequity was dismissed early in the trial for this reason.

There was no doubt but that the Gustafsons knew of the uranium mine tailing problem. The trial court instructed the jury as follows:

"You are instructed that if the Gustafsons sold their home to Homequity, and it in turn sold the home to the Schnells, the Gustafsons had no duty to disclose the radioactive condition in the home to the Schnells, and your verdict shall be for the defendants Gustafsons. If you find that the Gustafsons sold their home to the Schnells, then a duty arose to disclose the condition of the house to the Schnells if this defect was a material defect."

The Schnells objected to this instruction at trial, and it is the focal point of this appeal. By this instruction the court was telling the jury that unless there was a direct contractual relationship between the Gustafsons and the Schnells, as buyer and seller, the Gustafsons had no duty to disclose this latent defect to the Schnells. This was error.

This doctrine of contract law, privity of contract, may not be used as a shield in this tort action. *Weller v. Cosmopolitan Homes, Inc.*, Colo.App., 622 P.2d 577 (1980) (*cert. granted*, February 2, 1981). *See also Lembke Plumbing & Heating v. Hayutin*, 148 Colo. 334, 366 P.2d 673 (1961).

In a misrepresentation action the plaintiff must prove: (1) a false representation by the defendant; (2) the defendant's knowledge that the representation was false; (3) defendant's intention to induce the plaintiff's reliance on the representation; (4) the plaintiff's justifiable reliance on the representation; (5) damage to the plaintiffs. *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937); *W. Prosser, Torts* § 105 (4th ed. 1971). And, a false representation may be the failure to disclose a material fact which in good conscience should have been disclosed. *McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813 (1975). Specifically, a seller of real estate has a duty to disclose to his purchaser a known latent defect, and his "failure to disclose amounts to concealment, making him vulnerable to a suit based upon fraud." *Cohen v. Vivian*,

141 Colo. 443, 349 P.2d 366 (1960). This rule modifies the first requirement of *Morrison v. Goodspeed, supra*, and equates non-disclosure where there is a duty to disclose, with a false representation.

In our view, the fact that the Gustafsons did not sell directly to Schnells should not insulate them from liability for their failure to disclose this latent defect, if such defect was a fact that "in equity and good conscience [they] should have disclosed." *Morrison v. Goodspeed, supra.* Even absent privity of contract, if the Schnells were among that group of people who the Gustafsons intended to rely on their non-disclosure and who could justifiably rely on it, the duty to disclose the latent defect was no less strong and compelling than the duty of disclosure by the seller in *Cohen v. Vivian, supra.*

That the reliance may have been intended and justified is indicated by the fact that, here, the parties were not strangers; they had two meetings when the Schnells were in the shopping stage and one more before the closing. *See Varwig v. Anderson-Behel Porche/Audi, Inc.*, 74 Cal.App.3d 578, 580, 141 Cal.Rptr. 539 (1977); *Parker Precision Products Co. v. Metropolitan Life Insurance*, 407 F.2d 1070 (3d Cir. 1969); *Metric Investment, Inc. v. Patterson*, 101 N.J.Super. 301, 244 A.2d 311 (1968); *Restatement (Second) of Torts* § 551 (1977).

Consequently, the trial court erred in its instruction, the effect of which was to limit liability for non-disclosure of a latent defect to situations where there is privity of contract. Instead, the jury should have been instructed that even if no privity of contract existed between plaintiffs and the Gustafsons, the Gustafsons would be liable in tort if the requisite elements of misrepresentation were found to exist.

The judgment is reversed and the cause is remanded for a new trial.

COYTE and KIRSHBAUM, JJ., concur.