James H. ELIJAH and June A. Elijah, Petitioners,

v.

George S. FENDER, Respondent.

George S. FENDER, Petitioner,

v.

James H. ELIJAH and June A. Elijah, Respondents.

Nos. 82SC135, 82SC147.

Supreme Court of Colorado,
En Banc.

Jan. 9, 1984.

Ralph B. Harden, Harden, Schmidt & Haas, P.C., Fort Collins, for petitioners in No. 82SC135 and respondents in No. 82SC147.

Steven G. Francis, Fischer & Wilmarth, Fort Collins, for respondent in No. 82SC135 and petitioner in No. 82SC147.

DUBOFSKY, Justice.

We granted cross-petitions for certiorari to review the unpublished opinion of the Court of Appeals in *Fender v. Elijah*, No. 80CA0509 (February 18, 1982), which modified a district court judgment awarding damages to the Elijahs for Fender's breach of fiduciary duty. We affirm in part and reverse in part, with directions to the Court of Appeals to reinstate the district court judgment.

I.

The defendants, James and June Elijah, entered into a contract with George and

Rachel Morgan for the trade of the Elijahs' Park Terrace Motel (motel) for two trailer parks owned by the Morgans. The plaintiff, George Fender, acted as real estate broker for the Elijahs and the Morgans. The motel was subject to two outstanding deeds of trust, and the trailer parks were subject to various encumbrances. The net value of the motel was $80,000 greater than the net value of the trailer parks. To make up the difference, the Morgans agreed to transfer to the Elijahs property located in Berthoud (Berthoud property) which the parties agreed was worth $80,000. The Morgans initially claimed that the Berthoud property was subject to a $15,000 debt, and agreed to pay that debt within one year of the closing on the trade transaction. At that time, the deed to the Berthoud property was to be delivered from escrow to the Elijahs free and clear of encumbrances.

Prior to the closing, the Morgans informed Fender that the indebtedness on the Berthoud property was more than $15,000. Fender's attorney, Russell Pugh, called the Berthoud National Bank, holder of the deed of trust on the Berthoud property, and was told that the Bank would release the deed of trust for $36,889.76, adding $16.78 interest per day. Computing the interest that would accrue if the Morgans paid the indebtedness one year from closing, Pugh determined that the actual indebtedness on the Berthoud property was $43,014.46, not $15,000.00. Fender did not tell the Elijahs about this additional indebtedness. Instead, he told the Morgans that they would have to produce collateral for the $43,000 debt, and to remain silent about it. The Morgans indicated that they owned another trailer park in Deer Trail, Colorado. Before the closing Fender had Pugh prepare a note for $43,000 payable to the Elijahs and signed by the Morgans and a deed of trust on the Deer Trail property. This action was not revealed to the Elijahs. The record indicates that the Morgans had purchased the Deer Trail property for $30,000 and had paid no money down. The property later was conveyed back to the original owner without consideration because of the Morgans' inability to pay for the property. The

Morgans subsequently failed to pay any of the indebtedness on the Berthoud property, and the Elijahs did not receive the deed on the property until they had paid the debt owed to the Berthoud National Bank.

The trade contract provided that each party pay Fender a 6% commission. Subsequent agreements were made in which the Morgans agreed to pay Fender $20,000, a 3% commission. The amount of the Elijahs' fee was disputed at trial, but the district court found that the Elijahs had agreed to pay Fender $5,000. To protect the $20,000 Morgan commission, Fender, without informing the Elijahs, had the Morgans execute to him a deed of trust on the motel to secure a $20,000 note. This action was directly adverse to the security interest in the motel taken by the Elijahs. The security interest was created by the trade contract which provided that a warranty deed from the Elijahs to the Morgans would be executed and placed in escrow until the two outstanding deeds of trust on the motel were paid or refinanced. The Morgans were to pay the Elijahs, who would pay the mortgagees, the amounts owing on the deeds of trust. The Morgans also executed a quitclaim deed to the Elijahs which was placed in escrow, to be delivered to the Elijahs if the Morgans failed to meet their obligations. Subsequent to the closing, Fender assigned his deed of trust and note for his commission from the Morgans to Donald Miller for its full value of $20,000. The Morgans defaulted on the note and Miller instituted foreclosure proceedings on the motel. The day before the foreclosure sale, the Elijahs, having received the Morgan quitclaim deed from escrow, instituted a quiet title action to protect their interest in the motel, claiming that the Morgans were unable to convey an interest in the motel to Miller through Fender because of the escrow arrangement. The district court agreed with the Elijahs, but the Court of Appeals, in the unpublished opinion of *Elijah v. Miller,* No. 77–068 (July 20, 1978), reversed, holding that the Morgans became equitable owners of the property when they took possession of the motel, and therefore,

were able to convey their interest. Miller was given possession of the motel as the purchaser at the foreclosure sale. An important factor to the Court of Appeals was that Miller had agreed to pay the indebtedness on the motel's two outstanding deeds of trust. The Elijahs spent $9,140 in attorneys' fees in *Elijah v. Miller*.

The present action was instituted by Fender, suing for the balance of his commission from the Elijahs which he alleged to be $14,250.[1] The Elijahs counterclaimed for fraud, breach of contract and breach of fiduciary duties. Russell Pugh, Fender's attorney at the closing, was the Elijahs' attorney when the counterclaims were first asserted. He subsequently moved the district court to dismiss the counterclaims but no order was entered on the motion. Pugh then withdrew as counsel, and the Elijahs' new attorneys moved the district court to withdraw the motion to dismiss the counterclaims. This motion was granted. At this time, Fender moved for leave to file a third-party complaint against Pugh under C.R.C.P. 14(b). Fender asserted that Pugh was negligent in handling the closing of the trade transaction, and in failing to obtain a dismissal of the counterclaims in the present action, making Pugh liable for any damages Fender would be required to pay the Elijahs. The district court denied leave to file the third-party complaint.

After trial the district court ruled that Fender had clearly breached his fiduciary duty as the Elijahs' real estate broker by closing a transaction that had not been agreed upon by the Elijahs, by concealing the additional indebtedness on the Berthoud property, by concealing the fact that worthless collateral on the Deer Trail property was given to the Elijahs to secure payment of the indebtedness on the Berthoud property, by taking a secured interest in property being transferred by the Elijahs with a retained security interest, and by concealing his self-dealing throughout the transaction. The court ruled that Fender was not enti-

tled to a commission, and awarded damages to the Elijahs in the amount of the commission paid by them—$5,540. The court also awarded the Elijahs $43,014.46 for their loss caused by the extra indebtedness on the Berthoud property; $9,410 in attorneys' fees expended in *Elijah v. Miller;* and $20,-000 for the loss of their security interest in the motel. The judgment was amended to exclude the $20,000 after the Elijahs confessed error to the award. They admitted that because Miller had assumed the outstanding indebtedness on the motel, they suffered no actual damage.

The Court of Appeals modified the damage award. It agreed that the Elijahs were entitled to a refund of the amount paid on the commission, but held that the award of attorneys' fees was improper. The case was remanded for a determination of what amount was owing on the Berthoud property at the time of the closing, because in the court's opinion there was "conflicting evidence in the record as to the actual amount owed...." The Court of Appeals instructed the district court to deduct $15,000 from the amount owing on the property in determining the amount of damages because the Elijahs closed the transaction on the assumption that the amount of the indebtedness on the Berthoud property was $15,000, and the Elijahs retained the property and did not attempt to rescind the transaction after discovering the larger debt.

The issues presented to this court for review are whether the district court erred in rejecting Fender's third-party complaint against his attorney, Russell Pugh; and whether the Court of Appeals was correct in its assessment of damages for breach of fiduciary duty. We hold that the district court did not abuse its discretion in refusing to permit the filing of the third party complaint. We affirm the Court of Appeals' award in the amount paid on Fender's commission, but reverse the remand to determine the amount owing on the Berthoud

---

1. At the closing Fender presented the Elijahs an agreement setting his commission at $14,-250. When the Elijahs protested, Fender told them to sign and that the amount would be

determined later. The district court found that Fender and the Elijahs subsequently agreed to a $5,000 commission.

property, the instructions to deduct $15,000 from that amount, and the denial of attorneys' fees incurred in *Elijah v. Miller.*

## II.

After Russell Pugh withdrew from his representation of the Elijahs in this action, Fender moved under C.R.C.P. 14(b) for leave to file a third-party complaint against Pugh, his former attorney. The district court denied the motion, stating that the complaint asserted a claim that arose after the action was filed, the motion was not seasonably made, and the complaint did not constitute proper third-party practice under C.R.C.P. 14(b).

C.R.C.P. 14(b) allows a plaintiff who has had a counterclaim asserted against him to bring in a third party under the provisions of C.R.C.P. 14(a). Rule 14(a) provides that a party "may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the [counterclaimant's] claim against him."

▇▇▇ "Matters relating to the filing of third-party complaints under C.R.C.P. 14(a) are within the sound discretion of the trial court." *Public Service Company of Colorado v. District Court,* 638 P.2d 772, 774 (Colo. 1981). This court has held that "a denial of a party's motion to implead a third party affects no substantive rights." *Id.* at 774. "The court ... may properly deny leave to file a third-party complaint ... if the claim for liability by the defendant against the third party is doubtful or if the introduction of the third-party claim would 'unduly complicate the case to the prejudice of the plaintiff.'" *Id.* at 775 (quoting 3 *J. Moore, Federal Practice* ¶ 14.05[1] at 14–32 (2d ed. 1983) (footnote omitted)).

▇▇▇ We hold that the district court did not abuse its discretion in denying Fender leave to file a third-party complaint against Pugh. Pugh had represented the Elijahs in this action and one claim in the third-party complaint asserted Pugh's negligence in not obtaining dismissal of the Elijahs' counterclaim. The other claim basically alleged that Pugh's representation of Fender at the closing of the trade transaction constituted malpractice. These factors indicate that the third-party claims may have unduly complicated the case to the prejudice of the Elijahs. The district court committed no abuse of discretion in concluding that Fender's claim against Pugh would be better handled in a separate action.[2]

## III.

We next address the Court of Appeals' decision modifying the damages awarded by the district court.

▇▇▇ The Court of Appeals affirmed the district court ruling that the Elijahs were entitled to a refund of the amount paid on the commission. An agent is liable for the loss caused to the principal by any breach of duty. *Restatement (Second) of Agency* § 401 (1958); *White v. Brock,* 41 Colo.App. 156, 159, 584 P.2d 1224, 1227 (1978). A broker whose breach of duty results in a client's loss cannot require that his commission be paid. *White v. Brock, supra.* It is clear that Fender is not entitled to a commission. The judgment in the amount of $5,540 is affirmed.

The Court of Appeals erred in remanding the case for a determination of the amount owing on the Berthoud property. The evidence plainly shows that the Berthoud National Bank informed Pugh that it would release its deed of trust on the Berthoud property for $36,889.76 plus $16.78 per day

---

**2.** Fender asserts that he has suffered prejudice because of the district court's rejection of the third-party complaint in that he may be collaterally estopped in his independent action against Pugh as a result of findings made in this case. His argument is basically that Pugh should have been joined under C.R.C.P. 19(a), providing for the joinder of persons needed for a just adjudication, or C.R.C.P. 20(a), permitting joinder of persons if there is a right to relief against them arising out of the same transaction or occurrence. Fender requested the district court to grant impleader under C.R.C.P. 14(b); he did not request joinder under C.R.C.P. 19(a) or C.R.C.P. 20(a). The district court's ruling is properly analyzed only under the standards of C.R.C.P. 14(b).

in interest. Based on the Morgans' agreement to pay the indebtedness one year from the closing of the trade transaction, Pugh and Fender determined that the total indebtedness was $43,014.46. This figure is supported by Fender's telling the Morgans that they would have to produce $43,000 in collateral. The $43,014.46 was not disputed by Fender at the trial, and he assumed the correctness of that figure in his briefs to the Court of Appeals.

 The Court of Appeals also erred in its instruction to deduct $15,000 from the total indebtedness on the Berthoud property based on the fact that the Elijahs had closed the transaction on the assumption that the amount of the indebtedness was $15,000, and had retained the property without seeking a rescission of the transaction after discovering the larger debt. The Morgans agreed that they would deliver to the Elijahs the deed to the Berthoud property, valued at $80,000, free and clear of any encumbrances. $80,000 was the difference between the net value of the motel and the two trailer parks, and the transfer of property worth $80,000 was essential to the original agreement. If Fender had disclosed the $43,014.46 debt, the Elijahs most likely would have required other arrangements. In any event, Fender's concealment precluded the Elijahs from making these decisions. That Fender arranged what amounted to worthless collateral for the indebtedness does not improve his position. It is instructive to note that the Elijahs were personally required to pay the Berthoud National Bank $46,644.71 before receiving the deed to the Berthoud property.[3] The fact that the Elijahs did not attempt to rescind the transaction after discovering the larger indebtedness is irrelevant. While a rescission suit may have been an option, cf. H & K Automotive Supply Co. v. Moore & Co., 657 P.2d 986 (Colo.App.1982), the Elijahs had a cause of action against their broker for breach of fiduciary duty. Therefore, we hold that the Elijahs incurred damages in the amount of the $43,014.46 indebtedness on the Berthoud property and that Fender's breach of fiduciary duty was a direct cause of the loss.

 The final issue is whether the Elijahs were entitled to damages for the attorneys' fees incurred in Elijah v. Miller. The Court of Appeals held that there were no grounds for awarding those fees. We disagree. "When the natural and probable consequence of a wrongful act has been to involve plaintiff in litigation with others, the general rule is that the reasonable expenses of the litigation may be recovered from the wrongdoer." International State Bank of Trinidad v. Trinidad Bean & Elevator Co., 79 Colo. 286, 245 P. 489, 489 (1926). See also Sun Indemnity Co. of New York v. Landis, 119 Colo. 191, 201 P.2d 602 (1948). Were it not for Fender's actions in taking a security interest in the motel and subsequently assigning that interest, the Elijahs would have retained ownership of the motel. The Court of Appeals apparently read its own case of McNeill v. Allen, 35 Colo. App. 317, 534 P.2d 813 (1975) as requiring that a party be a defendant in the litigation before being entitled to attorneys' fees. The pertinent language of McNeill provides:

> [International State Bank of Trinidad v. Trinidad Bean & Elevator Co., supra; and Sun Indemnity Co. v. Landis, supra] permit recovery of litigation costs only where the party seeking the costs had to defend his rights against third parties in separate litigation.

534 P.2d at 819. The rule stated in McNeill is correct. It does not require, however, that a party be a defendant in prior litigation to recover costs. A party may be placed in a position of having to bring suit as plaintiff to defend his rights. A quiet title action is an obvious example. It is also not mandatory that the party prevail in the earlier litigation. In this case, Fender's actions were the very cause of the Elijahs' defeat in Elijah v. Miller. Because the suit brought by the Elijahs in Elijah v. Miller was not spurious, we hold that damages

---

**3.** The amount over $43,014.46 represents additional interest paid by the Elijahs.

should be awarded for attorneys' fees incurred in that case in the amount of $9,410.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and returned to the Court of Appeals with directions to reinstate the district court judgment.