John S. SWARTZ, Marian L. Swartz, and Reverie Trust; Arthur F. Shenkin and Geraldine Shenkin, trustees; Stephen P. Robertson; Robert Orr; George N. Peak; and Michael L. De Alessi; Plaintiffs–Appellees,

v.

BIANCO FAMILY TRUST; James A. Bianco and Kay C. Bianco, trustees; James A. Bianco, individually; Kay C. Bianco, individually; and David Anderson; Defendants–Appellants.

No. 92CA1543.

Colorado Court of Appeals, Div. IV.

Nov. 18, 1993.

Rehearing Denied Dec. 30, 1993.

Certiorari Denied June 13, 1994.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Holland & Hart, Peter C. Houtsma, Denver, for plaintiffs-appellees.

Hall & Evans, Alan Epstein, Denver, for defendants-appellants.

Opinion by Judge RULAND.

Defendants, Bianco Family Trust, James A. Bianco and Kay C. Bianco, individually and as trustees of the Trust, and David Anderson, appeal from a judgment setting aside a conveyance from Anderson to the Bianco Family Trust and awarding damages for intentional interference with contract. We affirm in part and reverse in part.

This case involves four adjacent lots on which cabins were constructed and a 100–acre parcel which is contiguous to the lots and extends to the boundary of a national park. In 1968, plaintiffs or their predecessors in title and the predecessors in title to Anderson, each owned one of the four lots and cabins. They determined to purchase the 100–acre parcel in order to ensure that it would not be developed or sold except in a manner consistent with their joint agreement.

The owners of the four cabins each purchased an undivided one-quarter interest in the subject parcel. They entered into a written and recorded agreement which required a majority to approve any future sale or development of the parcel with one vote being allocated to the owners of each cabin. The parties also included a right to purchase the interest of any of the other owners as follows:

> Should any of the parties ... desire to sell ... [their one-quarter] interest in ... the property ... such party shall first offer the interest ... to the remaining parties severally in writing and, if such parties as a group do not evidence a desire to purchase the same within fifteen (15) days, then the offer to sell ... shall be made to each of the parties individually and any one of the parties has the right to acquire the interest being sold.... If, within fifteen (15) days, the property is not disposed of to one of the remaining parties and no one evidences a desire to purchase the same, then the interest ... may be offered ... to one other than those then holding an interest in said property, but ... not ... at a price less than previously offered to those interested....

The parties agreed that the quoted provision would be binding upon their "heirs, representatives and assigns."

In 1990, the Bianco defendants purchased property in the vicinity of the cabins intending to construct a road for access across the subject parcel. The Biancos contacted Anderson relative to purchasing his undivided one-quarter interest. The Biancos and Anderson were aware of the contents of the written agreement. However, the Biancos were advised that the quoted provision was unenforceable and relied upon this advice, at least in part, in structuring the purchase.

At the insistence of the Biancos, the conveyance from Anderson to them was not disclosed to plaintiffs. When plaintiffs learned of the transfer in 1991, this action was filed, among other things, to set aside the transfer, to require Anderson to convey his interest in the parcel to plaintiffs at the same price paid by the Biancos, and for damages for intentional interference with contract.

Following a trial to the court, it entered findings of fact and conclusions of law awarding plaintiffs the relief requested and damages against the Bianco defendants (except Kay Bianco individually) consisting of attorney fees incurred in the litigation and $5,000 for emotional distress. Relying upon *Cambridge Co. v. East Slope Investment Corp.*, 700 P.2d 537 (Colo.1985), the trial court rejected defendants' contention that the quoted provision violated the Rule Against Perpetuities and created an unreasonable restraint upon alienation.

I

■ Defendants initially contend that the trial court erred in setting aside the conveyance. They maintain that the quoted provision both violates the Rule Against Perpetuities and constitutes an unreasonable restraint upon Anderson's right to sell his interest in the parcel. We are not persuaded.

Plaintiffs and defendants agree that the quoted provision creates a pre-emptive right on the part of plaintiffs to purchase interests of co-owners in the parcel at such time as any owner desires to sell. There is likewise

no dispute that the provision creates a technical violation of the Rule Against Perpetuities because it is binding upon the heirs and assigns of the co-owners. *See Atchison v. City of Englewood,* 170 Colo. 295, 463 P.2d 297 (Colo.1969); *see also Perry v. Brundage,* 200 Colo. 229, 614 P.2d 362 (1980). The issue then is whether this violation renders the quoted provision unenforceable.

We agree with the trial court that, consistent with our supreme court's analysis in *Cambridge Co. v. East Slope Investment Corp., supra,* the provision is enforceable. In *Cambridge,* the recorded declarations for a condominium association provided:

> In the event an owner of a unit desires to sell ... and receives a bona fide offer ... the unit shall be offered to the remaining owners who shall have a first right to purchase ... for the same terms....

Similar to the agreement before us, the declarations were binding upon the heirs and assigns of the unit owners.

The *Cambridge* court determined that a technical violation of the Rule Against Perpetuities had occurred. However, it further concluded that the restrictive provisions should not be set aside because the pre-emptive right could be exercised only after a unit owner determined to sell and then upon terms and conditions that the owner had already found acceptable. Thus, unlike a right of pre-emption for a fixed price, the owner was assured of receiving market value.

As a result, a unit owner was not deterred from either improving the unit or offering the unit for sale. Conversely, potential buyers were not deterred from purchasing a unit because the market value of the unit would be unaffected by the pre-emptive right. Thus, the court concluded that the policy considerations underlying the Rule against Perpetuities and the rule against unreasonable restraints were satisfied.

The same analysis is applicable here. Contrary to defendants' contention, the quoted provision does not preclude a third party from initially making an offer to the owner. Indeed, such an offer may trigger the owner's efforts to offer an undivided one-quarter interest to the other owners either "several-ly" or individually at the same price and on the same terms proffered by a third party.

■ Likewise, we do not view the phrase "evidencing a desire to purchase" as sufficiently vague to constitute an unreasonable restraint on alienation because it is difficult to determine how and when an offer by the co-owners or a co-owner is effective. Instead, as with other real estate contracts, we conclude that a reasonable time for performance should be implied so that any expression of intent to purchase by one co-owner or all the co-owners severally during the applicable 15–day period must close within a reasonable time after the expiration of 15 days. *See Shull v. Sexton,* 154 Colo. 311, 390 P.2d 313 (1964).

Next, we reject defendants' contention that the quoted provision in effect creates a fixed price because the selling owner may not accept a reduced price after the other owners have indicated no desire to purchase at the price originally offered by the seller. The offer of a reduced price by a third party, if acceptable, simply requires the selling owner again to initiate the process of determining whether the other owners desire to exercise the pre-emptive right to purchase the one-quarter interest.

■ Finally, we reject defendant's contention that an unreasonable restraint upon alienation is created because two or more individual owners may determine to purchase the offered interest during the second 15–day period, and the agreement does not state which offer will be accepted. The agreement requires the selling owner to "offer the interest" in writing to the other individual owners. As in other situations concerning multiple offers for sale, the first owner to accept the offer during the 15–day period would create an enforceable agreement to purchase the interest. *See Rice v. Gifford,* 107 Colo. 244, 110 P.2d 1113 (1941).

II

■ The Bianco defendants contend that the trial court erred as a matter of law in granting relief to plaintiffs on their claim of intentional interference with contract. Specifically, defendants maintain that the trial

court's findings on this claim are deficient because the findings do not specifically address Biancos' motive in interfering with the agreement. We find no merit in this contention.

The elements which must be established to recover damages for intentional interference with contract are contained in Restatement (Second) of Torts § 766 (1977). *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207 (Colo. 1984).

A determination whether the evidence here satisfies these requirements necessarily requires consideration of the Biancos' motive for inducing Anderson to convey his interest in the parcel without complying with the written agreement. *See Westfield Development Co. v. Rifle Investment Associates,* 786 P.2d 1112 (Colo.1990). However, contrary to defendants' contention, we view the trial court's extended findings here as implicitly determining that the motive of the Bianco defendants was "improper."

The trial court found, with record support, that the Biancos knew about the written agreement, knew that plaintiffs would not consent to construction of a road across the parcel, and insisted that Anderson not disclose the transfer of Anderson's interest to plaintiffs. Given the fact that the Biancos had already obtained an opinion of counsel that the pre-emptive right was unenforceable, there was no reason not to disclose the proposed transfer unless the motive was to preclude plaintiffs from challenging that transaction. Like the trial court, we are unable to characterize concealment in an attempt to defeat another's legal rights as a "proper" motive.

### III

The Bianco defendants finally contend that the trial court erred in awarding damages to plaintiffs for attorney fees incurred in the litigation because those damages were not incurred in separate litigation. We agree in part.

In *McNeill v. Allen,* 35 Colo.App. 317, 534 P.2d 813 (1975), a division of this court held that attorney fees incurred in separate litigation might be recovered as damages if the wrongful acts of a third person required the claimant to engage in separate litigation in order to protect or preserve the claimant's rights. In *Elijah v. Fender,* 674 P.2d 946 (Colo.1984), our supreme court approved the rule adopted in *McNeill* but indicated that the party seeking recovery of attorney fees was not limited to appearing only as a defendant in the separate litigation but that such party could also appear as a plaintiff. *See also Feit v. Donahue,* 826 P.2d 407 (Colo. App.1992). Thus, we are required to determine whether the plaintiffs here may be characterized as defending or asserting their rights in "separate litigation." We conclude that they may.

As pertinent to this issue, plaintiffs asserted four claims for relief. The first consisted of a claim to quiet title based upon plaintiff's contention that the written agreement precluded any conveyance by Anderson to the Biancos without compliance with the preemptive rights granted to the parties by the agreement. The second claim asserted plaintiffs' right to specific performance of the agreement, and the third claim asserted plaintiffs' right to have Anderson's deed declared invalid. The final claim sought damages for interference with that agreement.

Resolution of the first three claims necessarily involved a determination as to the nature and extent of plaintiffs' pre-emptive rights. Plaintiffs were required to seek this determination in order to protect the rights granted them by the written agreement. The Biancos were clearly indispensable parties for resolution of those claims because they claimed a recorded ownership interest in the property covered by the agreement. C.R.C.P. 105(b); *see also Woodco v. Lindahl,* 152 Colo. 49, 380 P.2d 234 (1963); *Seago v. Fellet,* 676 P.2d 1224 (Colo.App.1983). Further, resolution of these claims was a condition precedent to resolution of the interference with contract claim.

Thus, we conclude that the first three claims may be characterized as "separate litigation" for purposes of an award of fees. To conclude otherwise would require that separate lawsuits be filed involving the same subject matter and parties with the attendant

expense to the litigants and the resultant burden upon the judicial system. *See Prospero Associates v. Redactron Corp.*, 682 P.2d 1193 (Colo.App.1983) (applying New York law).

 We agree with Biancos, however, that the court's award of fees for pursuing the interference with contract claim was error. While plaintiffs are entitled to recover reasonable damages for this tort claim, absent circumstances not present here, such damages do not include attorney fees incurred for asserting and proving that claim. *See Bunnett v. Smallwood*, 793 P.2d 157 (Colo. 1990); *Rhodes v. Copic Insurance Co.*, 819 P.2d 1060 (Colo.App.1991).

To the extent that *Soneff v. Harlan*, 712 P.2d 1084 (Colo.App.1985) is inconsistent with the result we reach here, we decline to follow that decision.

### IV.

 The Bianco defendants' final argument is that the trial court erred in awarding damages to plaintiffs for emotional distress because it made no finding that such distress was reasonably to be expected and because there is no evidence to support such a finding. We affirm the court's ruling.

 Damages recoverable for tortious interference with contract include emotional distress if that distress may be reasonably expected to result from the interference. *Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112 (Colo.App.1990) (citing Restatement (Second) of Torts § 774A(1)(c) (1977)); *Westfield Development Co. v. Rifle Investment Associates, supra.* And, we view the court's bench findings as supplemented by its written findings sufficient for us to determine that it addressed and resolved this issue in favor of plaintiffs.

Conversely, defendants' evidentiary argument ignores the testimony that plaintiffs, as a group, were so distressed when they learned the Biancos were planning to assert an easement right and place a road across the parcel that they all ceased speaking to the Biancos. It further ignores evidence and inferences from evidence that plaintiffs were further distressed that their intent to keep the parcel as an area of wilderness might be frustrated by Anderson's conveyance. It may be further inferred that the Bianco defendants were or should have been aware that such distress could be expected from their undertaking. Hence, we find no reversible error in the court's decision.

That part of the judgment awarding attorney fees is reversed, and the cause is remanded for further proceedings to redetermine the award consistent with the views expressed in this opinion. The other provisions of the judgment are affirmed.

CRISWELL and PLANK, JJ., concur.