No. 18,815.

Colorado Kenworth Corporation *v.*
Henry Clay Whitworth.
(357 P. [2d] 626)

Decided December 5, 1960.   December 30, 1960, on petition for
rehearing opinion modified and rehearing denied.

Messrs. GRANT, SHAFROTH, TOLL, CHILSON and Mc-HENDRIE, Mr. ROYCE D. SICKLER, for plaintiff in error.

Mr. J. V. CONDON, Mr. GEORGE B. LEE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

WE recount the chronology of the transaction and the ensuing suit which culminated in the issuance of a writ of error from this court on application of Colorado Kenworth Corporation. Kenworth would have us reverse an adverse judgment in the sum of $5,000.00 obtained by Whitworth.

On December 19, 1956, Whitworth purchased a used truck-tractor from Kenworth at a sales price of $6,500.00. His initial payment was represented by a credit of $1,428.48 for a truck which he turned over to Kenworth and cash in the sum of $500.00. He gave Kenworth a note for the balance, secured by a chattel mortgage on the truck-tractor. By the terms of these instruments, the first of seventeen successive monthly payments of $278.00 was to be made on January 25, 1957, and a final payment of $263.50 on or before June 25, 1958.

The note and chattel mortgage were contemporaneous instruments with a sales agreement executed by the parties. By the latter Kenworth guaranteed the truck-

tractor "for 30 days on 50% parts and 50% labor basis." By it Whitworth agreed that the "title to and right of possession of said motor vehicle shall remain in the above seller [Kenworth] until the full purchase price has been paid."

The chattel mortgage provided that the possession of the vehicle remain in Whitworth "so long as and only so long as [Kenworth] shall deem itself to be secure in the payment of this mortgage and the indebtedness aforesaid and the conditions of this mortgage are fulfilled." It also required Whitworth to keep the truck-tractor in "first-class repair and running condition" at his expense, and should he fail in this respect Kenworth could at its "option pay said charges, taxes or liens and the sum or sums so paid shall be added to the amount unpaid * * * and shall be immediately due and payable and shall be repaid" by Whitworth to Kenworth.

On the way to Missouri, to start hauling freight for Pacific Intermountain Express, mechanical difficulties developed which required repairs costing Whitworth $101.00. After his arrival in Missouri he had to replace a brake valve for which he paid $40.00. Other defects were detected from time to time over a scant period, the rectification of which required small outlays of money.

On January 17, 1957, the vehicle broke down near Columbia, Missouri. The motor was inoperable and the vehicle was towed to a garage where Kenworth authorized repairs for which it would advance the payment and require Whitworth to defray his 50% of the expense under the agreement. The total cost of the repair work was $700.96, and Kenworth was billed for it.

Whitworth operated his vehicle for Pacific Intermountain Express for nearly three weeks, in the course of which he made five trips. Thereafter he hauled freight for Ringsby Truck Line for approximately thirty days, making eight trips for the latter.

A check executed by Whitworth and dated February 11, 1957, in the sum of $178.00, was sent to Kenworth. A

check dated February 18, 1957, in the sum of $700.96, was sent by Kenworth to the garage in Columbia, Missouri, to pay for the repairs to the motor. A check executed by Whitworth and dated February 19, 1956, in the sum of $100.00, was sent to Kenworth and payment thereon was not realized, because of insufficient funds, until March 21, 1957. These two checks ($178.00 and $100.00) completed the January payment.

Whitworth entered into a written agreement with Watson Bros. Transportation Co., Inc., on March 1, 1957, by the terms of which he leased the truck-tractor for a period of one year for haulage of freight. He immediately started to perform the duties required of him under the terms thereof, and acted in pursuance of the contract until May 4, 1957, the date on which Kenworth took possession of the truck-tractor.

On April 22, 1957, Kenworth elected to declare the entire balance on the note due and payable under the terms of the acceleration clause. Its agent was directed to take possession of the truck-tractor. On April 29, 1957, Whitworth sent a check to Kenworth in the sum of $834.00, representing payments of $278.00 for the months of February, March and April. This check was cashed on May 2, 1957. On May 4, 1957, the agent of Kenworth demanded the truck-tractor from Whitworth, who advised him of the last payment.

The evidence is in dispute as to what took place after the agent demanded that the vehicle be delivered to him. A telephone call by the agent verified the receipt of the check for $834.00. Whitworth testified that the agent advised him that the check would be returned; that Kenworth "wanted payment in full" and "still wanted the truck." Kenworth "wouldn't let [him] have" the truck. The agent told Whitworth he "couldn't take the truck back to the Watson Brothers to get [his] personal things out of it."

The agent denied that he advised Whitworth the check would be returned to him, and further testified

that Whitworth willingly yielded the truck-tractor to him. He stated that Whitworth at one time expressed dissatisfaction over the decision of Kenworth to take the vehicle, but that later he said he was "actually sort of glad," that he would be able to stay with his family. The agent further testified that Whitworth turned the keys of the vehicle over to him.

In regard to the payment by Kenworth of the repair bill of $700.96, Whitworth stated that he did not know it had been paid and had not been informed that his 50% thereof had become due by reason of such payment.

Whitworth brought suit which, as stipulated at a pre-trial conference, was founded on the theory of conversion. By his suit he sought to recover damages from Kenworth for the taking, in the sum of $2,612.00, and for loss of earnings resulting from inability to perform his contract with Watson Bros. in the sum of $14,025.00, and exemplary damages in the sum of $5,000.00.

Kenworth answered and counterclaimed. It denied that the repossession was wrongful, relying on the chattel mortgage and an alleged delinquency in the performance thereof by Whitworth. It further alleged a voluntary surrender of the truck-tractor. By counterclaim it sought a judicial sale of the truck-tractor as in foreclosure, and a deficiency judgment if a balance due from Whitworth should eventuate.

Upon trial the factual situation as narrated above was presented. The several contracts for carriage of freight entered into by Whitworth, and his earnings thereunder, were introduced in evidence. At the conclusion of Whitworth's case Kenworth moved for a directed verdict and in the alternative "for an order limiting damages and striking allegations and prayers for exemplary and punitive damages." This motion was denied.

Reversal of the judgment is urged because of (1) asserted insufficiency of evidence to establish a conversion, (2) a failure to show the fair market value of the property alleged to have been converted, (3) a lack of evi-

dence to justify the submission to the jury of the question of exemplary damages, (4) singleness of verdict constituting error "if any one of the categories of damages should not have gone to the jury," and (5) Kenworth's right to judgment for the unpaid balance of Whitworth's obligation "whether or not Whitworth's truck was converted by Kenworth."

Was the evidence insufficient to beget a prima facie case of conversion? Since the details surrounding the taking are variant in certain respects, permitting of hostile findings and inferences by the fact finder, we are not disposed to disturb the jury verdict, unless as a matter of law they do not constitute a conversion under any aspect. *Brunton v. Ditto,* 51 Colo. 178, 117 Pac. 156. Our duty is to entertain inferences properly deducible from the evidence which favor the sustention of the judgment.

Was the taking rightful as a matter of law? Kenworth says it was, and in support of its contention relies on this provision of the chattel mortgage in its relation to the acceleration clause: "No waiver or failure to enforce any particular provision of this mortgage nor any extension of time or partial payment of any installment or amount due hereunder before or after delinquency *shall operate to extend the time of payment or the balance of such installments or the amount of any other installment* and shall not be considered as a waiver of the strict performance of this mortgage and all the provisions hereof." (Emphasis supplied.)

As we construe the quoted provision, it operates in futuro where a tardy payment has been unqualifiedly received. The acceptance of payment, although late, acts as a waiver pro tanto and bars the obligee from asserting delinquency. Receipt of a belated payment or payments does not work a waiver or extension as to future attempted unpunctual payments; this is the purport of the provision in question, and absent more

stringent terms, is as strict construction as we may give it.

■ The applicable law is set forth in *Barday v. Steinbaugh*, 130 Colo. 10, 272 P. (2d) 657, thus:

"The law is well settled that a payee who is given an option by the note to accelerate its payment may waive his right to such acceleration; that such waiver may be shown by mere inaction, and particularly by accepting payment of the installment or interest after the default; and more specifically by accepting payments after notice of election of acceleration. When plaintiff accepted the two payments on principal in November and December, 1952, after her notice of election in October, without notice to defendants that she was not waiving her rights as to the acceleration of the maturity date of the note, it is an absolute waiver of such right and made her notice ineffective and was, in effect, an extension of the terms of the note."

See *Thomas v. Beirne*, 94 Colo. 429, 30 P. (2d) 863; *Salida Bldg. & L. Ass'n v. Davis*, 16 Colo. App. 294, 64 Pac. 1046.

Whitworth made a payment of $834.00 after Kenworth had resolved to declare the entire obligation due. At the time, Whitworth did not know that Kenworth had elected to accelerate. Kenworth accepted the payment which made the chattel mortgage current unless the failure to pay his share of the $700.96 for repairs put Whitworth in default.

■ In accordance with the provision relating to repairs, Whitworth was obligated to *reimburse* Kenworth. This obligation arose only when Kenworth had paid the entire repair bill. Whitworth would not be expected to speculate as to Kenworth's performance in this respect, and hence it was incumbent on Kenworth to notify Whitworth of payment. That the record is devoid of knowledge in Whitworth of the payment is a stubborn fact which rules out a default in this regard.

But Kenworth contends that the suit for conversion

must fail because neither by allegation nor proof was a demand for the return of the truck-tractor made. There being no default, as appears from what we have said, the taking was unlawful. "For the purposes of an action for unlawful conversion, demand and refusal are never necessary, except to furnish evidence of the conversion; and when, without these, the circumstances are sufficient to prove the conversion, they are superfluous." *Salida Bldg. & L. Ass'n v. Davis,* supra.

Was the fair market value of the property converted ascertainable? Kenworth maintains that the proof in this respect was legally lacking.

The truck-tractor had been recently purchased. Expenditures had been made to rectify defects which developed in a short period of time. Its use by Whitworth was shown. It was being used to haul freight when it was taken. This was all presented to the jury. In determining the value of an article, its original cost may be shown in connection with the length of time it was used and its condition at the time in question. *Colorado Midland Ry. Co. v. Snider,* 38 Colo. 351, 88 Pac. 453; *Byron v. York Company,* 133 Colo. 418, 296 P. (2d) 742; *Barber v. Motor Inv. Co.,* 136 Ore. 361, 298 Pac. 216; *Genova v. Johnson,* 213 Ore. 47, 321 P. (2d) 1050; *Kimball v. Betts,* 99 Wash. 348, 169 Pac. 849.

"As between the parties to the contract * * *, the sale price was at least some evidence of the value of the car; and the amount paid by plaintiff was at least some evidence of the value of his special interest in the car. 89 C.J.S. Trover and Conversion, §239, p. 691. The value one week prior to the conversion, coupled with plaintiff's testimony as to his care of the car, was at least some evidence of value at the time of the conversion." *Genova v. Johnson,* supra.

We hold that the evidence of the cost of the truck-tractor, its betterment by extensive repairs, and the details of its use for the short period it was operated by Whitworth furnished the jury with sufficient data

upon which to determine its value at the time of the conversion.

■ Are consequential damages recoverable in a conversion action, or is the plaintiff restricted to a recovery of the value of the article taken with interest on such value? Any answer to this question must take into consideration that we are dealing with a commodity purchased for a purpose: hauling freight; this was in the contemplation of the contracting parties. Although the suit is in tort, Kenworth should be answerable to such damages as will completely indemnify Whitworth for the natural and probable consequences of its conversion. *Sansone v. Studebaker Corp. of America,* 106 Kan. 279, 187 Pac. 673; *Johnson v. Marks,* 121 N.Y.S. 294.

"Where special damage is laid and proved, there can be no reason for measuring the damages by the value of the chattel converted." *Bodley v. Reynolds,* 8 Q.B. 779, 55 E.C.L. 778. Damages flowing from a conversion which are not ordinary, usual or commonly to be expected are recoverable "if, under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural, nor remote as to cause, nor speculative and conjectural in effect." *Cannon v. Oregon Moline Plow Co.,* 115 Wash. 273, 197 Pac. 39.

That loss of profits resulting from a conversion of property is recoverable seems to be supported by the majority of the cases. *Preble v. Hanna,* 117 Ore. 306, 244 Pac. 75; *Universal Credit Co. v. Wyatt,* 56 S.W. (2d) 487 (Tex. Civ. App.). As was his duty, Whitworth showed in mitigation of these damages his various jobs since the truck-tractor was repossessed and what earnings he derived from them.

■ We next resolve the question of the propriety of submitting to the jury for consideration the matter of exemplary damages. Mistakenly, but in the belief that

it was within its rights, Kenworth asserted that Whitworth had not complied with the contract, thereby warranting its taking action to repossess the truck-tractor. Certain it is that the elements permitting a recovery of exemplary damages were absent from the case.

"It is true that a presumption of willfulness, wantonness or recklessness may arise from the conduct of a tort feasor and the circumstances under which the property is seized, but facts must be shown sufficient to give rise to the presumption. The mere taking of property under a claim of right over the protest of one in possession is not sufficient." *American Oil Co. v. Colonial Oil Co.,* 130 F. (2d) 72.

A single verdict was submitted to the jury. Value, consequential damages and exemplary damages, if any or all were found, were to be aggregated in this verdict. As we have determined that exemplary damages were improperly committed to the jury for consideration, and since we are unable to ascertain what part, if any, of the $5,000.00 verdict represents exemplary damages, we must hold the verdict ineffectual. Had the jury followed the rule in this jurisdiction that they specify in their verdict the separate amounts found for actual and for exemplary damages, a different result would have obtained. *Starkey v. Dameron,* 92 Colo. 420, 21 P. (2d) 1112, 22 P. (2d) 640.

The fifth ground urged is fully resolved by our disposition of the question of sufficiency of evidence to prove a conversion.

The judgment is reversed and the cause remanded with directions to grant a new trial.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL concur.