Robert R. VANDERBEEK; William C. Bacon; and Dorothy Severson, in their capacity as co-trustees on behalf of the James W. Vanderbeek Generation–Skipping Transfer Trust UTA6–21–82 Tax ID No. 7012717, Plaintiffs–Appellees and Cross–Appellants,

v.

VERNON CORPORATION, A British West Indies corporation, Defendant–Appellant and Cross–Appellee,

and

Rodrigo Rocha, individually, and Sierra Fria Corporation, a British Virgin Islands corporation, Defendants and Cross–Appellees.

No. 99CA1214.

Colorado Court of Appeals, Div. II.

Oct. 12, 2000.

Rehearing Denied Nov. 9, 2000.

Certiorari Granted July 2, 2001.

Wehrle Law Firm, P.C., Richard T. Wehrle, Denver, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Martin & Mehaffy, LLC, Joel C. Maguire, Boulder, Colorado, for Defendant–Appellant and Cross–Appellee, and Defendants and Cross–Appellees.

Opinion by Judge DAVIDSON.

Defendant, Vernon Corporation, appeals from a judgment entered by the trial court awarding damages resulting from a wrongful prejudgment attachment. Plaintiffs, Robert R. Vanderbeek, William C. Bacon, and Dorothy Severson, co-trustees of the James W. Vanderbeek Generation–Skipping Transfer Trust, cross-appeal from the trial court's dissolution of the writ of attachment, and the award of attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

On December 23, 1997, Vanderbeek obtained a prejudgment writ of attachment and garnishment on approximately $1 million deposited in defendant's account at a local bank. Defendant filed a motion to traverse the attachment. After a hearing on January 13, 1998, based on a forum selection clause in the partnership agreement between the parties, the court dismissed the action and dissolved the writ.

According to facts stipulated to and submitted to the court by the parties, defendant had intended to use the deposited funds to purchase 200,000 shares of stock in Osicom Technologies, Inc. This stock, which traded at $2 ⁹⁄₁₆ on December 24, 1997, would have cost approximately $450,000. However, as a result of the attachment, defendant was unable to purchase the stock until after the release of the funds, at which time the stock price had appreciated considerably. Consequently, defendant bought only 95,000 shares, for $449,828.15.

Defendant claimed damages of $331,015.65 for the additional costs of the 95,000 shares of stock purchased after release of the funds, and for the profits lost on the 105,000 shares that defendant would have purchased had the funds been available. At a hearing on April 2, 1999, the court granted defendant its costs and attorney fees and, as damages, interest on the principal amount of the funds during the time they were frozen. However, the court denied defendant's request for additional expenses and lost profits.

Defendant filed this appeal on June 18, 1999, and plaintiffs filed a cross-appeal on July 2, 1999. Contrary to defendant's contention, plaintiffs' cross-appeal was timely. *See* C.A.R. 4(a) (if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal is filed).

I.

On appeal, defendant contends that the trial court improperly assessed the award of damages. We agree in part.

Damages resulting from wrongful attachment are governed by tort principles. *See* C.R.C.P. 102(n)(2) ("A plaintiff who fails to prevail at the hearing provided by this section is liable to the defendant for any damages sustained as a result of the issuance of process, costs, and reasonable attorney's fees."). Generally, in an action for tort, an injured party is entitled to recover damages for the natural and probable consequences of the tort. *See McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813 (1975).

However, defendant's assertion to the contrary notwithstanding, there is a more specific and limited standard for recovery of

damages for torts in the nature of conversion, such as the wrongful attachment here. *See Colorado Kenworth Corp. v. Whitworth,* 144 Colo. 541, 357 P.2d 626 (1960).

■ Ordinarily, the measure of damages for tortious detention of money is the legal rate of interest for the period of such detention. *See Boyle v. Poor,* 62 Colo. 337, 163 P. 967 (1916). But, the victim of a wrongful attachment may also recover for other damages caused by the wrongful attachment. *See Colorado Kenworth Corp. v. Whitworth, supra.*

■ Such consequential damages include damages that are not "ordinary, usual, or commonly to be expected" if "under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural, nor remote as to cause, nor speculative and conjectural in effect." *Colorado Kenworth Corp. v. Whitworth, supra,* 144 Colo. at 549, 357 P.2d at 631.

■ This hybrid test for consequential damages finds its origins in both tort and contract. Ordinarily, in a tort action, an injured party is entitled to recover damages for the natural and probable consequences of the tort, *see McNeill v. Allen, supra,* whereas in a contract action, an injured party is entitled to recover only those damages in contemplation at the time of the formation of the contract. *See Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854); *see generally* 2 D. Dobbs, *Dobbs Law of Remedies* § 6.6(2) (2d ed.1993). As we read it, the measure of damages set forth in *Colorado Kenworth* for wrongful attachment is a tort standard, but also requires a measure of foreseeability ordinarily not required in proving tort damages.

■ The reason for such a hybrid test lies in the nature of torts involving purely economic interference, for which "physical injury torts furnish little analogy." 2 Dobbs, *supra,* § 6.6(2) at 136. Whereas physical injury torts might result in consequences impossible to contemplate at the time of commission—for example, the so-called "eggshell-skull plaintiff" principle—economic interference torts, such as wrongful attachment, intentional interference with contractual relationships or appropriation of trade secrets, inherently contemplate the possibility of economic loss. *See* 2 Dobbs, *supra,* § 6.6(2) at 133. Therefore, in such cases, a party is entitled to recover for further loss suffered as the result of the deprivation, subject not only to tort-like principles of causation but also to contract-like principles of certainty and foreseeability. *See* Restatement (Second) of Torts § 927 comment m (1979). Although defendant suggests that the measure of damages articulated in *Colorado Kenworth* is incorrect, to the contrary, the standard set forth in that decision properly reflects the dual nature of economic torts and the appropriate measure of recovery.

Here, the trial court determined that defendant was entitled to the amount of interest that accrued during the period in which the funds were frozen. However, the court declined to grant any additional damages, finding that because the stock market is the embodiment of that which is "speculative and conjectural in effect," such damages could not have been contemplated at the time of the wrong. Defendant argues that the amount of damages incurred was neither remote nor speculative. We agree in part.

Specifically, defendant's requested consequential damages consisted of two separate sums: the additional amount paid for the 95,000 shares—$242,728.15—and the loss of profit on the 105,000 shares not purchased—$88,287.50. The two parts of the claim are essentially different, and require a separate analysis. We conclude that defendant is entitled to damages based on the use value of the approximately $450,000 earmarked and eventually used for stock purchase, but not the more speculative lost profits value of the stock never actually purchased.

### A.

■ Considering the particular circumstances in this case, such as the relationship among the parties, the large amount of money involved, and the fact that plaintiffs knew such a large sum of money was being trans-

ferred into the state, it was within reasonable contemplation that the money attached was to be used for investment purposes of some kind. It also is undisputed that, at the time of the attachment, defendant intended to buy the Osicom stock, but as the result of the attachment was unable to do so until a later date. Moreover, as discussed, the rules pertaining to wrongful attachment, by their terms, contain an inherent element of foreseeability. *See* C.R.C.P. 102(n)(2) (appropriator will be liable for the consequences of wrongful attachment).

Thus, postponement of the stock purchase was the natural result of the wrongful attachment, and it was within the contemplation of the parties that the postponement would result in the loss of a favorable stock price. *See McNeill v. Allen, supra* (consequential damages awarded when postponement of a closing as the natural result of a fraud resulted in the loss of a favorable mortgage rate).

■ Moreover, the rule precluding the recovery of uncertain and speculative damages applies only when the fact of damages is uncertain, not where the amount is uncertain. *See Peterson v. Colorado Potato Flake & Mfg. Co.,* 164 Colo. 304, 435 P.2d 237 (1967). Although the activity of investing in the stock market may be inherently speculative, this portion of defendant's claim was not. It is undisputed that defendant had earmarked a certain sum of money to be used for purchase of the stock. As a result of the wrongful attachment, the amount of money that previously would have been used to purchase 200,000 shares only bought 95,000 shares. And, the additional amount paid for the 95,000 shares was a concrete figure that could be calculated given the time frame and the differences in the price of the stock.

Thus, despite the trial court's conclusion that "money [can] be put to innumerable uses," an identifiable portion of the wrongfully attached money here had been set aside for a particular purpose. Accordingly, defendant is entitled to the use value—the additional amount paid for the 95,000 shares—of the wrongfully attached $450,000 that it had intended to spend and, indeed, did spend, on Osicom stock.

B.

■ However, although courts have been willing to award damages based on ascertainable loss arising from deprivation of use, both for property and for money, they have differentiated between "use value" and "lost profits value," often awarding damages for the more ascertainable former but not for the more speculative latter. *Compare, e.g., Florida Transp. Co. v. Dixie Sightseeing Tours, Inc.,* 139 So.2d 175 (1962), *with Osborne v. Durbin,* 301 Ky. 412, 192 S.W.2d 198 (1946); see generally L.S. Tellier, Annotation, *Recovery of Value of Use of Property Wrongfully Attached,* 45 A.L.R.2d 1221 (1983). We disagree with defendant that it also is entitled to the loss of profit consisting of the rise in value of the 105,000 shares that it did not purchase as a result of the wrongful attachment.

■ Here, defendant's lost profits calculation results solely from the fortunate coincidence that the stock price had appreciated by the time of the hearing. Damages based on loss of profits are generally disfavored when the venture from which the projected profit is derived is speculative or conjectural. *See Milheim v. Baxter,* 46 Colo. 155, 103 P. 376 (1909) (claimed future profits from operation of a boarding house declared remote and speculative). *Cf. Barkhausen v. Bulkley,* 90 Colo. 558, 11 P.2d 220 (1932) (declining to follow *Galigher v. Jones,* 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658 (1889), in which damages were measured according to the highest market price within a reasonable time after conversion, court held that damages for conversion of stock must be measured at the time of conversion rather than at a later time).

In addition, as discussed, parties must have "the consequences in contemplation" at the time of a wrong, *see Colorado Kenworth Corp. v. Whitworth, supra,* and the parties here could have reasonably foreseen that the funds would be used for investment purposes. However, as the trial court noted, no reasonable person could have foreseen that the stock would go up "as dramatically in value, [because] stock trading is a gambler's business." See also Restatement (Second) of

Torts, *supra*, at § 912 comment f (requirement of "certainty" only met when the injured party would have had a substantial and measurable chance of a profit *without a chance of loss* ).

Accordingly, as to this portion of the claim, we agree that the trial court properly denied the requested damages.

## II.

On cross-appeal, plaintiffs contend that the trial court incorrectly determined that the forum selection clause in the Sierra Fria partnership agreement was mandatory. Further, they argue, if the writ was properly dismissed under the forum selection clause, the trial court erred in awarding attorney fees under the agreement. We disagree.

## A.

■ The forum selection clause reads as follows:

9.15 *Governing Law and Consent to Jurisdiction.* This Agreement and the Partnership shall be governed by and construed in accordance with the laws of the Netherlands Antilles. The Partners hereby expressly agree to submit any dispute or action arising between the Partners under, pursuant to or relating in any way to the Partnership, this Agreement, the Hotels or the relationship of the Partners with respect to any of the foregoing to the jurisdiction of the state or federal courts found within the State of Delaware, the City of Boston in the State of Massachusetts or the City of Miami in the State of Florida or to the courts found in Aruba or the Netherlands Antilles. The Partners hereby waive, to the fullest extent possible, the defense of an inconvenient forum to the maintenance of any such action or proceeding in the courts of any jurisdiction specified above.

■ Contract language mandating suit in a different forum requires dismissal whereas language merely permitting suit in such forum does not. *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318 (10th Cir.1997). When parties designate a mutually agreeable place in a forum selec-

tion clause, the language generally is interpreted as mandatory. *See Furry v. First National Monetary Corp.,* 602 F.Supp. 6 (W.D.Okla.1984) (forum selection clause designating Michigan as a "mutually reasonably convenient place for any trial" found to be mandatory). On the other hand, when language reflects that only one of the parties has agreed to subject itself to a particular jurisdiction, without more, it is generally viewed as permissive. *See Utah Pizza Service, Inc. v. Heigel,* 784 F.Supp. 835 (D.Utah 1992) (forum selection clause stipulating that the state of Michigan "shall have personal jurisdiction" over franchisee, that franchisee "shall submit to such personal jurisdiction," and that venue is "proper" in Michigan found to be permissive).

Here, as the trial court reasoned, the plain language of the clause, unlike that in *Utah Pizza,* does not reflect an intent to bring a particular partner into the jurisdiction of another partner. Nor does it reflect an effort by one set of partners to force other partners to submit to the jurisdiction of the other partners. To the contrary, the language reflects an effort of all of the partners to agree to the most convenient, reasonable, and mutually agreeable place for any lawsuit which may arise between or among them. Thus, it must be read as a mutual decision to submit a dispute which arises out of the partnership agreement to certain designated jurisdictions.

Consequently, as the trial court concluded, "The various limited and general partners in this case [intended] to make an agreement to designate certain mutually agreeable and convenient locations for suit in the event of any dispute, and they intended that any and all disputes arising out of the partnership agreement would be subject to the jurisdiction of those mutually agreed on by the parties. [Thus,] this is a mandatory section and not a permissive section." *Compare Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342 (10th Cir.1992), *with SBKC Service Corp. v. 1111 Prospect Partners, L.P.,* 105 F.3d 578 (10th Cir.1997).

■ Notwithstanding plaintiffs' argument to the contrary, the fact that the clause does

not contain the words "shall," "exclusive," or "only" does not make it merely permissive. No specific language is required for a provision to be mandatory. The clause need only contain clear language showing that the appropriate forum consists of that which has been designated. In contrast, permissive forum selection clauses authorize suit in the designated forum, but do not prohibit litigation elsewhere. *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc., supra.*

Here, the requirement that "any" dispute or action be filed in one of the five named jurisdictions expressly excludes the filing of suit elsewhere. *See Colorado State Bd. of Accountancy v. Raisch,* 931 P.2d 498 (Colo. App.1996), *aff'd,* 960 P.2d 102 (Colo.1998) ("any" is an inclusive term often used synonymously with the terms "every" and "all").

### B.

The trial court awarded attorney fees to defendant based, in part, on section 9.10 of the partnership agreement, which allows such an award to a prevailing party. Plaintiffs argue that, since the trial court determined that it did not have "subject matter jurisdiction" over the dispute, it also had no jurisdiction to determine any claims under the agreement.

However, the parties' agreement as to the place of the action cannot deprive a court of subject matter jurisdiction. *See ABC Mobile Systems, Inc. v. Harvey,* 701 P.2d 137, 139 (Colo.App.1985) ("Private individuals have no power to alter the rules of judicial jurisdiction. They may not by their contract oust a state of any jurisdiction it would otherwise possess."). Consequently, although the trial court properly concluded that it had to dismiss the case pursuant to the forum selection clause, it still had the authority to consider a post-trial request for attorney fees.

Moreover, we agree with defendant that plaintiffs waived their right to object to any lack of authority by filing the attachment action in the trial court.

Waiver is the intentional relinquishment of a known right, and such a contractu-al right will be waived if the party has acted inconsistently with it and if prejudice would accrue to the other parties. *See Vessels Oil & Gas Co. v. Coastal Refining & Marketing, Inc.,* 764 P.2d 391 (Colo.App.1988).

Here, plaintiffs had the right to rely on the forum selection clause. However, their attempt to avail themselves of the Colorado courts was inconsistent with their claim that the trial court lacked authority to award attorney fees. Furthermore, this caused prejudice to accrue to defendant in the form of damages.

Plaintiffs also argue that section 9.10 first requires determining who was the successful party, and that the appropriate amount of attorney fees must be determined pursuant to C.R.C.P. 102(n)(2). However, these issues were raised for the first time in their reply brief. Thus, we do not address them. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

The judgment is affirmed in part and reversed in part, and the cause is remanded to the trial court to recalculate defendant's award of damages consistent with this opinion.

Judge JONES and Judge VOGT concur.