Conal WILMOT and Von Wilmot, Plaintiffs,

v.

Robin B. McNABB, et al., Defendants.

No. C–02–03720–JF.

United States District Court, N.D. California, San Jose Division.

July 2, 2003.

Denis S. Kenny, Scherer & Smith, LLP, Richard E. Levine, Law Office of Richard E. Levine, San Francisco, CA, for Plaintiffs.

Lori A. Schweitzer, Shahrad Milanfar, Becherer, Kannett & Schweitzer, Emeryville, CA, Mark J. Hancock, Steven D. Wasserman, Sedwick Detert Moran & Arnold, San Francisco, CA, William S. Klein, Hopkins & Carley, San Jose, CA, Barbara A. Cotter, Murphy, Pearson, Bradley & Feeney, Sacramento, CA, Monique Winkler, Steefel Levitt & Weiss, Kenneth B. Siegel, Louise Bouzari, Sherman & Howard LLC, Denver, CO, Michael E. Freedman, Green & Freedman, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

FOGEL, District Judge.

Defendants Cambridge Investment Research, Inc. ("Cambridge"), American Investors Company ("AIC"), National Financial Services Corporation ("NFS"), and First Trust Corporation ("First Trust") and Fiserv, Inc. ("Fiserv") move separately to compel arbitration and to stay proceedings in the above-entitled matter. De-

fendant John Roslund joins in the motion of AIC. Plaintiffs oppose. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on April 7, 2003. For the reasons set forth below, the motions brought by Cambridge, AIC, and NFS will be granted. The motion brought by First Trust and Fiserv will be granted on the condition that arbitration of Plaintiffs' claims against First Trust and Fiserv occur within California.

## I. BACKGROUND

On August 1, 2002, Plaintiffs Dr. Conal Wilmot and Von Wilmot filed the instant action, alleging that they were defrauded by their former financial advisor, Defendant Robin B. McNabb ("McNabb"), and that Defendants Cambridge, AIC, NFS, First Trust, Fiserv, and other individuals and corporate entities assisted McNabb with his fraudulent scheme. Plaintiffs assert claims for securities fraud under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq. ("the Exchange Act"), common law fraud, breach of fiduciary duty, and breach of contract.

Plaintiffs, an elderly married couple who reside in Santa Cruz, California, allege the following in their amended complaint. From approximately 1994 to 2001, Plaintiffs maintained a business relationship with McNabb, who represented that he was a competent financial planner and investment advisor. During this period, Plaintiffs entrusted McNabb and other Defendants with management of their retirement accounts and other assets. Although Plaintiffs repeatedly instructed him to invest their assets only in conservative, low-risk investments, McNabb invested their assets in high-risk securities and other investment vehicles, engaged in excessive trading in order to generate management

fees, and misrepresented to Plaintiffs the state of their assets. McNabb also failed to disclose to Plaintiffs that in 1995 his association with AIC was terminated for mishandling client funds, that in 1999 the National Association of Securities Dealers, Inc. ("NASD") fined him $50,000 and barred him from association with any NASD member in any capacity for violating its rules, and that in 2000 the United States Securities and Exchange Commission upheld the NASD's disciplinary action. The value of Plaintiffs' assets declined substantially during the course of their association with McNabb and other Defendants.

Plaintiffs have submitted evidence that Dr. Wilmot suffers from a progressive brain condition similar to dementia and that since the mid 1990s he has manifested increasingly severe symptoms of his condition. See Ex. B to Declaration of Denis S. Kenny; Declaration of Von Wilmot ("Wilmot Decl.") ¶¶ 4–9. They assert that Dr. Wilmot's health has deteriorated to the point that he is unable to care for himself today. See Wilmot Decl. ¶ 9.[1]

Cambridge, AIC, and NFS move to compel arbitration based on two agreements to arbitrate entered into by Plaintiffs. On November 13, 1993, Plaintiffs signed a "Transmittal Form" in connection with their AIC investment account. This form includes an arbitration provision specifying that "any controversy between us arising out or relating to my [AIC] account ... shall be settled by arbitration in accordance with the rules, then obtaining, of the National Association of Securities Dealers, Inc." Ex. A to Declaration of Clarence Yee. On January 29, 1996, Plaintiffs opened an investment account with NFS and entered into a "Brokerage Account Pre Dispute Arbitration Agreement"

---

**1.** First Trust and Fiserv object to the Declaration of Von Wilmot. In light of its disposition of the instant motions, the Court concludes that it need not rule on the objection.

with Cambridge and NFS. *See* Ex. A to Declaration of Jennifer Moran. That arbitration agreement provides for arbitration of "all controversies that may arise between us" concerning Plaintiffs' NFS investment account "before an independent panel of arbitrators set by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc., as [Plaintiffs] may designate." *Id.*

First Trust and Fiserv [2] move to compel arbitration pursuant to a third agreement entered into by Plaintiffs. On August 20, 1997, Dr. Wilmot completed and executed a First Trust IRA application, which states expressly that he agrees to the "Arbitration Statement" attached to the IRA application. *See* Ex. 1 to First Trust's Motion to Compel Arbitration. The "Arbitration Statement" provides that any dispute arising out of the IRA will be resolved in binding arbitration before the American Arbitration Association in Denver, Colorado. *See id.*

## II. DISCUSSION

The moving Defendants argue that Plaintiffs must be compelled to arbitrate their claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"). Section 2 of the FAA provides that a written agreement to arbitrate in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v.*

*Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). If a district court determines that a party has failed to comply with a valid agreement to arbitrate, it must order the parties "to proceed to arbitration in accordance with the terms of the agreement," 9 U.S.C. § 4, and it may stay the litigation until the arbitration process is complete. 9 U.S.C. § 3. Plaintiffs do not dispute that the FAA mandates arbitration in certain cases and that they entered into the agreements to arbitrate at issue in this case, but they argue that those agreements are invalid or unenforceable.

### A. Motions Brought By Cambridge, AIC, and NFS

■ AIC moves to compel arbitration of Plaintiffs' claims against it based on the agreement to arbitrate contained in the AIC form signed by Plaintiffs on November 13, 1993. Cambridge and NFS move separately to compel arbitration of the claims against them based on the NFS arbitration agreement entered into by Plaintiffs on January 29, 1996.

Plaintiffs oppose the motions brought by Cambridge, AIC, and NFS, claiming that the parties made a mutual mistake of fact when they entered into the two agreements to arbitrate discussed above. In particular, Plaintiffs argue that they are entitled to proceed with arbitration in California before an arbitration panel that is compliant with new ethics standards for arbitrators adopted by the Judicial Council of California in April 2002. The new "Ethics Standards for Neutral Arbitrators in Contractual Arbitration" ("the California standards"), which are codified at Division VI of the Appendix to the California Rules of Court, took effect on July 1, 2002.[3]

---

**2.** First Trust is a wholly-owned subsidiary of Fiserv. *See* Affidavit of Joanne Radmore Ratkai ¶ 3, Ex. 2 to First Trust's Motion to Compel Arbitration.

**3.** In December 2002, the Judicial Council approved various revisions to the California standards that took effect on January 1, 2003.

Plaintiffs contend that the refusal of the New York Stock Exchange, Inc. ("NYSE") and the NASD to appoint an arbitration panel that is compliant with the California standards renders their agreements to arbitrate unenforceable because of the parties' mutual mistake of fact as to the availability of the arbitral fora provided by the NYSE and the NASD.

In *Mayo v. Dean Witter Reynolds, Inc.*, 258 F.Supp.2d 1097 (N.D.Cal.2003), *amended by Mayo v. Dean Witter Reynolds, Inc.*, 260 F.Supp.2d 979 (N.D.Cal. 2003), this Court considered whether an individual who entered into a valid and enforceable agreement to arbitrate his or her dispute before "self-regulatory organizations" (SROs) such as the NYSE and the NASD is entitled to proceed before an arbitration panel that is compliant with the California standards.[4] The Court concluded that application of the California standards to SROs is preempted by the Exchange Act and the comprehensive system of federal regulation of the securities industry established pursuant to the Exchange Act. *Id.* at 258 F.Supp.2d at —— ——, 2003 WL 1922963, at *9–13. The Court also concluded that at least as they were applied to the plaintiff in *Mayo*, the California standards also are preempted by § 2 of the FAA. *Id.* at 258 F.Supp.2d at —— – ——, 2003 WL 1922963 at *14–17. The Court thus determined that one who is obligated to arbitrate his or her dispute before a SRO has no enforceable legal right to proceed before an arbitration pan-

el that is compliant with the California standards. *Id.* 258 F.Supp.2d at ——, 2003 WL 1922963 at *17.

For the same reasons set forth in its *Mayo* decision, the Court concludes that the plaintiffs in this case are not entitled to proceed with arbitration in California before an arbitration panel that is compliant with the California standards. The parties have made no mutual mistake of fact as to the availability of the arbitral fora provided by the NYSE and the NASD, and Plaintiffs do not otherwise dispute that the two arbitration agreements at issue are valid and enforceable. Accordingly, the motions brought by Cambridge, AIS, and NFS will be granted.[5]

## B. Motion Brought By First Trust and Fiserv

■ First Trust and Fiserv move to compel arbitration of the claims asserted against them based on the agreement to arbitrate contained in the First Trust IRA application that Dr. Wilmot completed and executed on August 20, 1997. The face of the First Trust IRA application includes an "Acknowledgment and Signature" section that states in relevant part: "I have read and I agree to the Arbitration Statement that follows." The "Arbitration Statement" on page two of the application provides that:

> The Account Owner hereby agrees that all claims and disputes of every type and matter which may arise between the

---

**4.** The Court is aware that the question presented in *Mayo* arose after the Court had compelled arbitration of the parties' dispute, and that the same question is presented at an earlier stage in these proceedings. This difference is irrelevant for purposes of the Court's analysis.

**5.** Defendant John Roslund joins in the motion of AIC. Roslund is not a signatory to the agreement to arbitrate in the AIC form signed

by Plaintiffs on November 13, 1993. However, the sole allegation in the amended complaint that specifically concerns Roslund identifies only his business association and residence. *See* Amended Complaint ¶ 7. Roslund's joinder is not opposed by Plaintiffs, and on the record before it the Court concludes that his joinder in the motion of AIC is proper. Accordingly, the Court construes the motion of AIC as brought on behalf of AIC and Roslund.

Account Owner and First Trust shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association located in Denver, Colorado; that such arbitration proceedings and hearings shall take place only in Denver, Colorado; and that, to the extent not preempted by federal law, Colorado statutory law (including without limitation the statutes governing the award of damages in arbitration) and Colorado common law shall control during arbitration. The Account Owner expressly waives any right he/she may have to institute or conduct litigation or arbitration in any other forum or location, or before any other body.

Ex. 1 to First Trust's Motion to Compel Arbitration.

The claims against First Trust and its corporate parent, Fiserv, are based on identical factual allegations. *See* Amended Complaint ¶¶ 29, 30. Fiserv thus can enforce the arbitration agreement entered into between Dr. Wilmot and First Trust even though it is not a signatory to the agreement. *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320 (4th Cir.1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.").

■ Plaintiffs claim that Dr. Wilmot lacked the mental capacity to execute the First Trust IRA application on August 20,

1997 and that the contract, including the arbitration provision, therefore should be rescinded under California law.[6] First Trust and Fiserv contend correctly that the issue of rescission must be decided by the arbitrator, not this Court.[7] In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court determined that the question of whether there is fraud in the inducement of a contract containing an arbitration provision should be decided by the arbitrator, not the district court. *Id.* at 403, 87 S.Ct. 1801. The Ninth Circuit has held that "the rationale of *Prima Paint* extends to attempts to rescind contracts on other grounds." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140 (9th Cir.1991). Cases must "be submitted to arbitration unless there is a challenge to the arbitration provision which is separate and distinct from any challenge to the underlying contract." *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989). In other words, the district court "may not consider defenses that challenge the validity or enforceability of the entire contract." *McCarthy v. Providential Corp.*, No. C–94–0627 FMS, 1994 WL 387852, *5 (N.D.Cal. July 19, 1994) (citations omitted), *appeal dismissed,* 122 F.3d 1242 (9th Cir.1997). *Accord Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir.2001), *cert. denied,* 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002). Here, although Plaintiffs acknowledge that Dr. Wilmot signed the First Trust IRA

---

6. The Court notes that Plaintiffs have not asserted any claim for rescission in their amended complaint.

7. First Trust and Fiserv also argue that Plaintiffs have waived any right to rescind the contract. The Court need not address this argument because it agrees with the moving Defendants that the question of whether the

contract should be rescinded is an arbitrable issue.

First Trust and Fiserv rely on *West v. West,* 166 F.3d 1219 (9th Cir.1998) (table of decisions without reported opinions), an unpublished disposition of the Ninth Circuit. Counsel for First Trust and Fiserv are cautioned that citation to this Court of the *West* decision violates Ninth Circuit Rule 36–3.

application, they seek to rescind the entire contract.[8]

Plaintiffs argue alternatively that the agreement to arbitrate should not be enforced because it is unconscionable. Plaintiffs contend the contract as a whole is procedurally unconscionable because it is a contract of adhesion and that the arbitration provision is substantively unconscionable because its forum selection clause specifies venue in Denver. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Nonetheless, "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The FAA does not preempt state law governing the unconscionability of contracts of adhesion. *Ticknor*, 265 F.3d at 935, 941–42.

The arbitration provision at issue includes a choice-of-law clause specifying that to the extent it is not preempted by federal law, Colorado law "shall control during arbitration." Ex. 1 to First Trust's Motion to Compel Arbitration. First Trust and Fiserv contend that Colorado law thus governs the Court's unconscionability analysis. Plaintiffs contend that California law applies. Because the choice-of-law clause is limited to arbitration proceedings by its own terms and thus does not extend to litigation in this Court, Plaintiffs' argument that California law governs the unconscionability analysis is persua-

sive. The point is a significant one, because in this case it affects the outcome of the analysis.

Under Colorado law, "absent a conflicting and overriding public policy to the contrary in a particular situation, valid agreements to arbitrate in a particular situation should be enforced as written." *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 493 (Colo.1998). However, a court may decline to enforce the terms of a contract if the factors set forth in *Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo.1986), are present. *Industrial Products Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. Ct.App.1997). "The *Davis* factors mitigating against enforcement are: (1) a standardized agreement executed by parties of unequal bargaining strength; (2) the lack of opportunity to read and become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the [unconscionable] provision; and (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated." *Id.* A court should also consider the terms of the agreement, the relationship of the parties, and all of the circumstances surrounding the formation of the contract. *Id.* Plaintiffs contend that the first *Davis* factor is present because the First Trust IRA application is a standard-form contract of adhesion. "Even though a contract is a printed form contract and offered on a 'take-it-or-leave-it' basis, these features alone do not define adhesion contracts." *Ad Two, Inc. v. City and County of Denver*, 983 P.2d 128, 132 (Colo.Ct.App.1999), *affirmed*, 9 P.3d 373 (Colo.2000). Rather, "[t]here must be a showing 'that the parties were greatly dis-

---

**8.** Even if this Court were to consider Plaintiffs' rescission argument, there is insufficient evidence for it to conclude that Dr. Wilmot lacked the mental capacity in 1997 to execute the First Trust IRA application. That Dr. Wilmot may be mentally incompetent at the present time does not change this determination.

parate in bargaining power, that there was no opportunity for negotiation, or that (the) services could not be obtained elsewhere.'" *Jones v. Dressel,* 623 P.2d 370, 374 (Colo.1981) (citation omitted). While the Court can infer that First Trust and Fiserv enjoy superior bargaining power to Plaintiffs and that Plaintiffs had no opportunity to modify the terms of the contract, Plaintiffs have not proffered evidence or otherwise demonstrated that any of the other *Davis* factors are present.

Colorado courts have expressed a preference for upholding forum selection clauses. *See Vessels Oil & Gas Co. v. Coastal Refining and Marketing, Inc.,* 764 P.2d 391, 393 (Colo.Ct.App.1988); *ABC Mobile Systems, Inc. v. Harvey,* 701 P.2d 137, 139–40 (Colo.Ct.App.1985). The language of the venue provision at issue here—arbitration "shall take place only in Denver, Colorado" and not "in any other forum or location"—demonstrates that it is mandatory, not permissive. *Vanderbeek v. Vernon Corp.,* 25 P.3d 1242, 1248 (Colo.Ct. App.2000), *affirmed,* 50 P.3d 866 (Colo. 2002). Although Denver is an inconvenient venue for Plaintiffs, it arguably is a reasonable location for resolution of the parties' dispute because First Trust is a Colorado corporation with its principal place of business in Denver.[9] The Court concludes that neither the contract at issue nor its arbitration provision satisfies the criteria for unconscionability under Colorado law.

"Under California law, a contract is unenforceable if it is both procedurally and substantively unconscionable." *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir.2002), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002). The procedural element focuses on oppression or surprise due to unequal bargaining power, while the substantive element focuses on whether the terms are unduly harsh or one-sided. *Id.; Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003). The elements of procedural unconscionability and substantive unconscionability "operate on a sliding scale such that the more significant one is, the less significant the other need be." *Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165, 1172 (N.D.Cal.2002). "A contract or clause is procedurally unconscionable if it is a contract of adhesion." *Id. Accord Little,* 29 Cal.4th at 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979. The California Supreme Court has defined a contract of adhesion as a " 'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " *Armendariz v. Found. Health Psychcare Serv., Inc.,* 24 Cal.4th 83, 113, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000) (citation omitted). The contract at issue meets this definition. First Trust and Fiserv point out that the services they provide may be obtained elsewhere without submission to an arbitration agreement that includes a Denver venue provision. However, this Court has held that under California law the availability of alternative sources for the subject services is insufficient to defeat a claim of procedural unconscionability. *Comb,* 218 F.Supp.2d at 1172–73. The Court concludes that the contract at issue satisfies the criteria for procedural unconscionability in California.

Even if the First Trust IRA application is procedurally unconscionable, however, it nonetheless may be enforceable if its substantive terms are reasonable. *Id.* at 1173. As noted above, Plaintiffs contend that the arbitration provision is substantively unconscionable because its forum selection clause specifies venue in Denver. Plain-

---

**9.** Plaintiffs have not cited any Colorado authority indicating that a provision in an arbitration agreement specifying venue in a foreign state is substantively unconscionable.

tiffs rely on *Bolter v. Superior Court,* 87 Cal.App.4th 900, 104 Cal.Rptr.2d 888 (Cal. Ct.App.2001), for the proposition that arbitration agreements that require weaker parties to resolve their disputes in states geographically distant from their domiciles are substantively unconscionable. In *Bolter,* the plaintiffs appealed the trial court's order granting the defendant's motion to compel arbitration in Utah pursuant to provisions of the parties' franchise agreement. The agreement at issue in *Bolter* required that all disputes regarding the agreement be submitted for arbitration before the Salt Lake City, Utah office of the American Arbitration Association. *Id.* at 908, 104 Cal.Rptr.2d 888. The California Court of Appeal concluded that the franchise agreement was a contract of adhesion and that its "place and manner" terms were unduly oppressive to the plaintiffs. *Id.* at 907–09, 104 Cal.Rptr.2d 888. The circumstances of the parties were relevant to the court's analysis: the plaintiffs were small "mom-and-pop" franchisees located in California, and the party seeking to compel arbitration was an international carpet cleaning corporation that recently had relocated its headquarters from California to Utah. *Id.* at 909–10, 104 Cal. Rptr.2d 888. Because it found that only the "place and manner" terms of the contract were substantively unconscionable and that those terms were severable from the rest of the contract, the court issued a writ of mandate directing the trial court to vacate its judgment and enter a new and different order striking the forum selection provision; the court did not invalidate the entire agreement to arbitrate. *Id.* at 911, 104 Cal.Rptr.2d 888.

The reasoning of *Bolter* applies here. As in *Bolter,* the arbitration agreement at issue includes a venue provision that re-

quires Plaintiffs to resolve their dispute before the American Arbitration Association in a state geographically distant from their California residence. And as in *Bolter,* Plaintiffs are the weaker, less sophisticated parties who contend that the costs of proceeding in the specified venue are preclusive.[10] In *Comb,* this Court found that inclusion in PayPal's arbitration agreement of a provision that limited venue to PayPal's backyard was designed to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes. 218 F.Supp.2d at 1177. As with the defendant in *Comb,* First Trust does business throughout the United States but requires individual customers from across the country to travel to one locale to arbitrate their claims. Accordingly, the Court concludes that the venue provision is substantively unconscionable.

"Under California law, courts have discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety." *Circuit City,* 279 F.3d at 895 (citing Cal. Civ.Code § 1670.5(a)). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* (citing *Armendariz,* 24 Cal.4th at 124, 99 Cal.Rptr.2d 745, 6 P.3d 669). If "the offending provisions can be excised from the contract ... then the remainder of the contract can be enforced." *Mercuro v. Superior Court,* 96 Cal.App.4th 167, 184, 116 Cal.Rptr.2d 671 (2002). Plaintiffs note correctly that there is no express severability language in the First Trust IRA application. However, there is no indication that the contract at issue in *Bolter* included such language, and yet the California Court of Appeal conclud-

---

**10.** The Court notes, however, that Plaintiffs have not submitted declarations or other evidence supporting this contention.

ed that the terms of a similar venue provision were "clearly severable" from the rest of the arbitration agreement. 87 Cal. App.4th. at 911, 104 Cal.Rptr.2d 888. As in *Bolter,* the venue provision stands alone and does not permeate the contract. *See, in contrast, Armendariz, Mercuro, Circuit City,* and *Ferguson v. Countrywide Credit Industries, Inc.,* 298 F.3d 778 (9th Cir. 2002).[11] Even if the offending provisions are not severable, they can be excised from the contract by means of limitation. Accordingly, the Court finds and concludes that the following terms of the arbitration agreement are unconscionable and thus unenforceable: the clause "that such arbitration proceedings and hearings shall take place only in Denver, Colorado;" and the clause "in any other forum or location"[12] in the sentence "The Account owner expressly waives any right he/she may have to institute or conduct litigation or arbitration in any other forum or location, or before any other body."

Defendants emphasize that the same arbitration provision of the First Trust IRA application executed by Dr. Wilmot has been deemed valid and enforceable in unpublished decisions issued by three other federal courts. *See Saunders v. First Trust Corp.,* No. CV–98–4304 CAS (MANx) (C.D. Cal. filed Sept. 4, 1998) (tentative minute order), Ex. 3 to First Trust's Motion to Compel Arbitration; *O'Brien v. Hinkle,* No. 1:99CV179 (N.D. W.Va. filed Feb. 11, 2000) (order accepting

magistrate's recommendation), Ex. 5 to First Trust's Motion to Compel Arbitration; *Smith v. CNA Financial Corp.,* No. 7:01CV00653 (W.D.Va. filed March 14, 2002) (order), Ex. 6 to First Trust's Motion to Compel Arbitration. However, none of those courts considered whether the venue provision at issue here is unconscionable under California law.[13]

For the reasons discussed above, the Court concludes that the arbitration provision of the First Trust IRA application does not satisfy the criteria for unconscionability under Colorado law but that its venue provision satisfies the criteria for unconscionability under California law. Because the unconscionable provision is severable from the rest of the arbitration agreement or at least subject to limitation, all other terms of the arbitration agreement are valid and enforceable. Accordingly, the motion brought by First Trust and Fiserv will be granted, but the requirement that arbitration be conducted in Denver will be stricken. Arbitration of Plaintiffs' claims against First Trust and Fiserv shall proceed at an office of the American Arbitration Association located within California.

### III. DISPOSITION

Good cause therefore appearing, IT IS HEREBY ORDERED that the motions to compel arbitration brought by Defendants Cambridge, AIC, and NFS are GRANTED.[14] Having considered the terms of the

11. In *Circuit City,* the court found the entire arbitration agreement at issue unenforceable because "the objectionable provisions pervade the entire contract" and "[r]emoving these provisions would go beyond mere excision to rewriting the contract." 279 F.3d at 896. In *Ferguson,* the court found that the defendant's "arbitration agreement is so permeated with unconscionable clauses that we cannot remove the unconscionable taint from the agreement." 298 F.3d at 788.

12. The inclusion of "forum" in this clause in no way indicates any opposition by this Court to arbitration of the subject claims before the American Arbitration Association.

13. In fact, the *O'Brien* decision does not even address the venue provision and the *Saunders* decision is only a *tentative* minute order.

14. As noted above, the motion of AIC is construed as brought on behalf of AIC and Defendant John Roslund.

First Trust IRA application as well as the totality of the circumstances, the Court concludes that the Denver venue provision is substantively unconscionable under California law and thus unenforceable. Therefore, the motion to compel arbitration brought by First Trust and Fiserv is GRANTED on the condition that arbitration of Plaintiffs' claims against First Trust and Fiserv occur within California. The proceedings in this matter are stayed pending completion of the various arbitration processes.